785 F.Supp. 1369 (1992)
U.S. DURUM MILLING, INC., Plaintiff,
v.
FRESCALA FOODS, INC., Defendant.
No. 89-1697C(6).
United States District Court, E.D. Missouri, E.D.
March 4, 1992.
*1370 Bill Bay, Charles M. Poplstein, Joseph R. Dulle, Thompson & Mitchell, St. Louis, Mo., for plaintiff.
Fairfax Jones, Mark Brittingham, Casserly & Jones, St. Louis, Mo., for defendant.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on the merits of plaintiff's claims after a one day non-jury trial. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and being fully advised in the premises, makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. Fed. R.Civ.P. 52.

FINDINGS OF FACT
1. Plaintiff U.S. Durum Milling, Inc. is a Minnesota corporation with its principal place of business located in St. Louis, Missouri. Plaintiff is engaged in the business of selling processed grain and flour products for use in manufacturing of food goods.
2. Defendant Frescala Foods, Inc. is a Texas sub-chapter S corporation with its principal place of business located in San Antonio, Texas. Defendant is engaged in the business of manufacturing fresh pasta to sell to grocery stores.
3. On June 16, 1988, Justin Arecchi, president of defendant, telephoned Franco Musumeci, the Feed Ingredient Manager at plaintiff, in St. Louis, Missouri in order to inquire as to plaintiff's ability to provide sufficient quantities of flour at a price agreeable to defendant. In response to this conversation, Musumeci agreed to supply defendant with a sample of its product.
4. On June 22, 1988, Musumeci express mailed a twenty pound package of Durum-Patent flour to defendant's office in San Antonio, Texas.
5. After performing tests on the sample flour and determining the product was acceptable, defendant decided to place an order with plaintiff.
6. On June 29, 1988, Arecchi telephoned Musumeci and placed a bid to purchase 750,000 pounds of flour during July 1988 through September 1988. After discussing the terms of the proposed contract, Musumeci *1371 quoted Arecchi the price of $18.81 per one hundred pounds of flour and thereafter Arecchi placed an order to purchase 750,000 pounds of flour at the $18.81 price. Musumeci accepted Arecchi's order and mailed a written confirmation to defendant's office. This contract is known as the Contract of Sale No. 1438 (1438 contract).
7. Under the terms of the 1438 contract, defendant agreed to purchase and plaintiff agreed to sell 750,000 pounds of Durum-Patent flour at the price per one hundred pounds of $18.81 during the period beginning in July 1988 and terminating on September 30, 1988.
8. Between July 19, 1988 and September 28, 1988, defendant took delivery of 342,400 pounds of flour pursuant to the 1438 contract. Defendant arranged for trucks to come to St. Louis and pick up the flour and deliver the flour in San Antonio. Defendant failed to take delivery of the remaining 407,600 pounds of flour.
9. On August 10, 1988, Arecchi telephoned plaintiff concerning the purchase of an additional 1,000,000 pounds of Durum-Patent flour. After discussing the delivery period and the availability of the product, Musumeci quoted to Arecchi the price of $19.24 per one hundred pounds and thereafter Arecchi placed a bid to purchase an additional 1,000,000 pounds of flour at the $19.24 price to cover the time period from October 1988 through December 1988. Musumeci accepted defendant's bid over the telephone in St. Louis and on the same day he mailed a confirmation to defendant. This contract is known as Contract of Sale No. 1483 (1483 contract).
10. Under the terms of the 1483 contract, defendant agreed to purchase and plaintiff agreed to sell 1,000,000 pounds of Durum-Patent flour at the price per one hundred pounds of $19.24 during the period beginning October 1, 1988 and ending on December 31, 1988. Defendant failed to take delivery of any of the flour covered by the 1483 contract. After signing the 1483 contract, plaintiff billed defendant for flour delivered under the 1438 contract at the 1438 contract price. Musumeci testified that a typical industry practice is for parties to enter into a series of three month contracts such as the contracts at issue in this case.
11. Musumeci offered the only testimony at trial as to the fair market value of the goods covered by the two contracts. His unrebutted testimony established that the fair market value of Durum-Patent flour of the same type and quality as stated in the 1438 contract was $17.32 per one hundred pounds on or about September 30, 1988 and in the 1483 contract was $15.51 per one hundred pounds on or about December 31, 1988. He further testified that the practice of using the time of delivery as intended by the parties, in this case the expiration date of the contracts, is the one customarily used in the industry.

CONCLUSIONS OF LAW
1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, in that the amount of all claims alleged in the complaint filed in this case exceeded $50,000.00 and plaintiff and defendant are citizens of different states. Personal jurisdiction herein is based on Mo.Rev.Stat. § 506.500(2) (1986), in that defendant entered into two contracts within the State of Missouri.
2. On February 7, 1991, the Court granted partial summary judgment in favor of plaintiff on Count II of its complaint, a suit on account, in which plaintiff sought recovery of $40,712.40 and interest thereon in the amount of nine per cent (9%) per annum from September 28, 1988 to the date of judgment for 342,400 pounds of flour delivered to defendant pursuant to the 1438 contract.
3. With respect to the application of the long arm statute, plaintiff contends that either of two prongs, the transaction of any business or the making of a contract within the state, applies to this case. The Court finds it unnecessary to reach the transaction of business prong of the long arm statute because the contract prong is once again clearly satisfied.
4. A contract is made in Missouri if the final act which gives rise to a *1372 binding agreement occurs within this state. See Shady Valley Park & Pool, Inc. v. Dimmic, 576 S.W.2d 579, 580 (Mo.Ct.App. 1979). In this case plaintiff once again demonstrated at the time of trial facts which indicate that the final act creating the contracts for the sale of grain and plaintiff's oral acceptance of defendant's offer to purchase the flour at a particular price, occurred in Missouri. Defendant contends that since the final act giving rise to the binding agreement occurred when Arecchi on behalf of defendant accepted plaintiff's offer quoting a price in Texas, the 1438 contract and the 1483 contract of sale are Texas contracts, not Missouri contracts. Consequently, the contract prong of the long arm statute would not serve as a basis for the Court to exercise personal jurisdiction over defendant.
5. The Court concludes that the final act binding the parties occurred when Musumeci accepted on behalf of plaintiff defendant's bid for a set quantity at a fixed price for delivery during a definite time period. His acceptance occurred in Missouri, and therefore, the 1438 contract and 1483 contract are both Missouri contracts thereby subjecting defendant to this Court's jurisdiction pursuant to the contract prong of the long arm statute.
6. The Court further finds that the exercise of personal jurisdiction over defendant would not violate the due process requirements of the Fourteenth Amendment. The due process clause of the Fourteenth Amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. It requires the defendant to have certain minimum contacts with the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir.1983). Accord World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
7. In this circuit, the due process standard has devolved into a consideration of the following five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d at 1340.
8. Applying these principles to this case, the Court concludes that the exercise of personal jurisdiction over defendant comports with the requirements of the due process clause. Although defendant has relatively few contacts with this state, they are substantial enough that it should have anticipated being haled into Court here.
9. The Court finds that the 1438 contract and the 1483 contract are governed by Missouri law since Missouri was the place where the contracts were entered, performed and where the transactions thereunder occurred. O'Donnell v. Saint Luke's Episcopal Pres. Hosp., 800 F.2d 739, 740 (8th Cir.1986) (citing Modine Mfg. Co. v. Carlock, 510 S.W.2d 462, 464 (Mo. 1974)).
*1373 10. The elements of proof under Missouri law for a cause of action based on a breach of contract are as follows: (1) the existence of a contract; (2) the plaintiff had certain rights and defendant certain obligations thereunder; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of defendant's breach. Vandever v. Junior College District of Metro. Kansas City, 708 S.W.2d 711, 716 (Mo.Ct.App.1986).
11. The Court finds that the 1438 contract entered on June 29, 1988 and the 1483 contract executed on August 10, 1988 were two separate contracts to be performed at different periods of time. Under the terms of the 1438 contract, defendant agreed to purchase from plaintiff and plaintiff agreed to sell to defendant 750,000 pounds of Durum-Patent Flour at the flat price per c.w.t. of $18.81 during the time period of July 1988 through September 1988. Under the terms of the 1483 contract, defendant agreed to purchase from plaintiff and plaintiff agreed to sell to defendant 1,000,000 pounds of Durum-Patent Flour at the flat price per c.w.t. of $19.24 during the time period of October 1988 through December 1988.
12. Finding the language of the contracts is unambiguous, the intention of the parties and interpretation of the contract is for the Court to determine from the four corners of the contract. Press Mach. Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784 (8th Cir.1984). "According to Missouri law, the court's role is to determine the intention as manifested not by what the parties now say they intended but by the document." Id. In making this inquiry, the Court may consider not only the mere words of the contract but also the surrounding circumstances at the time of contracting and the positions and actions of the parties. Id. at 784-85.
13. The Court concludes that defendant's contention concerning the parties executing the 1483 contract to modify the terms of the 1438 contract by extending the time period, raising the price of the flour and increasing the amount to be purchased to be without merit.
14. Under the terms of the 1438 contract, defendant was obligated to purchase and take delivery of 750,000 pounds of flour during the time period of July 1988 through September 30, 1988. Defendant accepted delivery of 342,000 pounds under this contract. Defendant breached the 1438 contract by failing to purchase and to take delivery of the remaining 407,600 pounds of flour. Under the terms of the 1483 contract, defendant was obligated to purchase and take delivery of 1,000,000 pounds of flour during the time period of October 1, 1988 through December 31, 1988. Defendant breached the 1483 contract by failing to purchase and to take delivery of any of the flour covered in this contract.
15. In its post trial brief, defendant raises the defense of unilateral mistake as an affirmative defense to an action at law for the breach of contract for the first time. Sheinbein v. First Boston Corp., 670 S.W.2d 872, 876 (Mo.Ct.App. 1984). The Court finds it unnecessary to address the affirmative defense of unilateral mistake in light of defendant's waiving this defense as a result of its failing to plead this theory until its post trial brief. Moreover, the Court notes that defendant never sought leave to file an amended answer adding this affirmative defense. If in fact defendant had made such a request and filed an amended answer including the affirmative defense of unilateral mistake, the defense would no longer be considered waived. Groninger v. Davison, 364 F.2d 638, 640 (8th Cir.1966). The Court further concludes that since evidence relating to this unpleaded affirmative defense was not introduced at trial, it cannot infer that the parties regarded the issue as one then being tried by the express or implied consent of the parties.
16. The remedies available to a seller of goods for the buyer's failure to take delivery of the goods covered by the contract are outlined in § 400.2-703. Mo.Rev.Stat. § 400.2-703 (1986). The Court notes that "[w]hile the Uniform Commercial Code has not eliminated the concept of `election of remedies' it has rejected it as a fundamental *1374 policy." Anheuser v. Oswald Refractories Co., 541 S.W.2d 706, 710 (Mo.Ct.App. 1976). Applying the facts of this case to the provisions of the code, the Court cannot find that defendant elected as his sole remedy the option to resell the goods covered by the contract and recover the damages pursuant to § 400.2-706. Section 400.2-703(e) provides that the aggrieved seller may retain the undelivered balance and recover damages for nonacceptance pursuant to § 400.2-708. Under § 400.2-708 "the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price."
17. Upon review of contract 1438 and contract 1483, the Court concludes that the time of delivery as intended by the parties was the expiration date of the contract periods. Moreover, this is the date customarily used in the industry. The determinative date for the 1438 contract is September 30, 1988 and for the 1483 contract the determinative date is December 31, 1988.
18. Applying the foregoing to the facts of this case, the Court calculates that plaintiff's damages resulting from defendant's breach of the 1438 contract total $5,665.65 and of the 1483 contract total $37,400.00. The Court computed this figure by subtracting $17.42 per 100 pounds, the fair market value of the flour on or about September 30, 1988 from the contract price of $18.81 per 100 pounds as provided for in the 1438 contract and multiplying the difference of $1.39 per 100 pounds by 407,600 pounds, the amount of flour defendant failed to receive under the 1438 contract. The Court computed the damage figure for the 1483 contract by subtracting $15.50 per 100 pounds, the fair market value of the flour on or about December 31, 1988 from the contract price of $19.24 per 100 pounds as provided for in the 1483 contract and multiplying the difference of $3.74 per 100 lbs. by 1,000,000 pounds, the amount of flour defendant failed to receive under the 1483 contract.
19. Plaintiff moves the Court to award it prejudgment interest at the legal rate of nine per cent (9%) per annum pursuant to Mo.Rev.Stat. § 408.020 (1986), from September 30, 1988 to the date of judgment on Count I and from December 31, 1988 to the date of judgment on Count III. Mo.Rev.Stat. § 408.020, provides in relevant part:
Creditors shall be allowed to receive interest at the rate of nine per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they come due and demand of payment is made[.]
Under Missouri law, the Court shall award prejudgment interest whenever the amount due is "liquidated or, although not strictly liquidated, is readily ascertainable by reference to recognized standards." Saint Joseph Light & Power Co. v. Zurich Ins. Co., 698 F.2d 1351, 1355 (8th Cir.1983) (citing Denton Constr. Co. v. Missouri State Highway Comm'n, 454 S.W.2d 44, 59-60 (Mo.1970) and Mo.Rev.Stat. § 408.020 (Supp.1982)). Accordingly, the Court will award prejudgment interest on the sum of $5,665.64 from September 30, 1988 to the date of judgment and on the sum of $37,400.00 from December 31, 1988 to the date of judgment.