TIGER MANUFACTURING
CORPORATION,
Plaintiff,

v.

LOADSTAR MATERIAL HANDLING
EQUIPMENT, LTD., Defendant.

No. 04–0402–CV–W–HFS.

United States District Court,
W.D. Missouri,
Western Division.

Oct. 18, 2004.

■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■

David R. Buchanan, Brown & James, PC–KCMO, Kansas City, KS, Steven H Schwartz, Brown & James, PC–St.Louis, St. Louis, MO, for Tiger Manufacturing Corporation, Plaintiff.

Rodney J Hoffman, Slagle, Bernard & Gorman, Kansas City, MO, for Loadstar Material Handling Equipment, Ltd., Defendant.

## ORDER

SACHS, District Judge.

Before the court is the motion of defendant, Loadstar Material Handling Equipment, LTD., to dismiss this action due to lack of personal jurisdiction. Plaintiff, Tiger Manufacturing Corporation, opposes the motion, and claims that jurisdiction is proper because under RSMo. §§ 506.500.1(2) and 506.500.1(1), Loadstar made contracts and transacted business in Missouri.

### BACKGROUND FACTS

Tiger is in the business of manufacturing and selling airplane ground support equipment, including airplane towing tractors and baggage handling belt loaders. Tiger is a Missouri corporation with its principal place of business located in Lee's Summit, Missouri. Tiger is owned by a California corporation. Loadstar is in the business of reselling material handling equipment, and has its principal place of business in Willoughby, Ohio.

Tiger claims, and Loadstar does not dispute that it has purchased towing tractors through the use of purchase orders submitted by Loadstar to Tiger. This dispute apparently arose due to Loadstar's alleged failure to pay for four airplane towing tractors ordered during the period of July 28, 2003, through August 1, 2003. Tiger seeks recovery of $106,549.60, plus interest. In his affidavit, Joe Conway, a member of the Board of Directors of Tiger, averred that these orders were initiated by Loadstar, and that Loadstar has communicated on a regular and systematic basis with Tiger, via telephone and mail. (Plaintiff's Exh. A: ¶ 15).

In his affidavit, Alfred Vanderhill, a shareholder, director, and officer of Loadstar, stated his correct understanding that Tiger was a subsidiary of a California corporation, and has demanded that Loadstar send its payments to Tiger in California. (Defendant's Exh. A: ¶ 9). Vanderhill also acknowledged that since 1998, Loadstar purchased approximately fifteen (15) towing tractors from Tiger. (Id. at ¶ 10). Finally, Vanderhill agreed that, in the general course of doing business with Tiger, either he or another Loadstar representative would contact Tiger by telephone, followed by a purchase order, and after Tiger manufactured each tractor, it would arrange for shipping from its Missouri location to Loadstar's customers located outside of Missouri. (Id. at ¶¶ 10–11).

### PERSONAL JURISDICTION

*Standard Of Review*

■ When a motion to dismiss for lack of personal jurisdiction is made on a matter not appearing on the record, the trial court may hear it on affidavits presented by the parties, or the court may direct that the matter be heard wholly or partly on oral testimony or deposition. *Chromalloy American v. Elyria Foundry*, 955 S.W.2d 1, 4 (Mo. 1997). When affidavits are presented, the trial court may believe or disbelieve any statements made within those

affidavits. *Id.* It is within the sole discretion of the trial court to make such factual determinations. *Id.*

██ However, "[t]o survive a motion to dismiss for lack of personal jurisdiction, [plaintiff] need only make a *prima facie* showing of personal jurisdiction over [defendant]." *RDO Foods Co. v. United Brands Intern., Inc.,* 194 F.Supp.2d 962, 966 (D.N.D.2002). In examining the *prima facie* showing, the court must view the evidence in the light most favorable to the plaintiff, and it must resolve all factual conflicts in the plaintiff's favor. *RDO Foods,* at 966.

██ A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution. *May Department Stores Company v. Wilansky,* 900 F.Supp. 1154 (E.D.Mo.1995); *citing, Dakota Industries, Inc. v. Ever Best Ltd.,* 28 F.3d 910, 915 (8th Cir.1994). A two-step analysis is utilized to determine whether personal jurisdiction exists over nonresident defendants. *May Department Stores,* 900 F.Supp. at 1159. First, it is determined whether the state long-arm statute confers jurisdiction. If so. then the court must decide whether the exercise of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Id.*

*Long Arm Statute*

In a diversity case such as this, the court must apply the law which the Missouri state courts would apply. *Harrison v. Union Pacific R. Co.,* 45 F.Supp.2d 680, 682 (E.D.Mo.1999). Tiger, therefore, bears the burden of making a prima facie showing of personal jurisdiction. *Harrison,* at 682. Because Loadstar is not a resident of Missouri, and from the briefing and the papers filed, it appears that service was not accomplished in Missouri, the Missouri long arm statute applies. *Id.* The Missouri long arm statute provides in relevant part:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state* * * * *.

2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction * * * is based upon this section. *Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.,* 747 F.2d 448, 453 (8th Cir. 1984). *citing,* Mo.Rev. Stat. § 506.500.

In its complaint, Tiger claimed that in September of 2003, it entered into an agreement with Loadstar in which Tiger agreed to sell four (4) airplane towing tractors to Loadstar in exchange for payment in the amount of $106,549.60. (Complaint: ¶ 8). This was confirmed in the affidavit of Jim Conway, who averred that between July 28, 2003, and August 1, 2003, Loadstar submitted three (3) purchase orders for the above noted equipment. (Plaintiff's Exh.: pg. 1–2). After which, Tiger then transmitted order acknowledgments to Loadstar. (*Id.*).

■ According to Tiger, the final act binding the parties occurred when Tiger accepted Loadstar's purchase orders at its Missouri office. Tiger argues that, therefore, each contract should be considered a Missouri contract subjecting Loadstar to this court's jurisdiction. In support thereof, Tiger relies on *U.S. Durum Milling, Inc. v. Frescala Foods, Inc.*, 785 F.Supp. 1369, 1371–72 (E.D.Mo.1992), where the court held that the final binding act occurred in Missouri where the plaintiff seller accepted defendant buyer's bid for a set quantity, at a fixed price, for delivery during a definite time period. Tiger contends, and Loadstar does not dispute, that the facts of *Frescala Foods* are analogous to those presented here. Thus, Loadstar is subject to this court's jurisdiction under that section of the long arm statute in which it made a contract with Tiger in this state. *see*, § 506.500(2) [1].

Tiger also argues that Loadstar transacted business in Missouri by accepting title to the four tractors at Tiger's Missouri facility. In support of this argument, Tiger relies on *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 312 (8th Cir.1982), for the proposition that the statutory phrase "transacting business" is liberally construed by Missouri courts. While this proposition has been held, it is important to note that in *Scullin Steel*, the court ultimately found that the activities of the defendant did not satisfy the statutory requirement of "transacting any business" within Missouri. *Scullin Steel*, 676 F.2d at 312. The court found that all of the negotiations, before and after the execution of the sales agreement, were conducted in Pennsylvania, not in Missouri; none of the defendant buyer's personnel ever visited Missouri in connection with the sales agreement or the specifications. *Id.*

Similarly, there is no dispute that the negotiations at bar were conducted by telephone, and that payment was directed to Tiger in California.[2] Although Tiger claims that it delivered the tractors to Loadstar agents at Tiger's facility in Missouri, the purchase orders indicate that at least two of the four tractors were to be shipped by Tiger itself directly to customers in New Mexico and North Carolina. (Plaintiff's Exh.: D–G). "FOB Factory" on the purchase orders appears to be a pricing mechanism rather than an indication of immediate control exercised in Missouri. Contrary to Tiger's contention, these factors alone are insufficient to constitute the "transaction of any business" within the meaning of the long-arm statute. *Scullin Steel*, 676 F.2d at 312–13; *citing, Shady Valley Park & Pool, Inc. v. Dimmic*, 576 S.W.2d 579, 580 (Mo.Ct.App. 1979) (no transaction of any business within the forum state where contract was made by interstate telephone call; with contract performance by resident plaintiff within forum state).

Although Loadstar does not submit to this court's jurisdiction for transacting business within this state, jurisdiction can

---

1. It is noted, however, that "Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state." *Scullin Steel Company v. National Railway Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982). But Judge Gunn, in spite of *Scullin*, ruled that due process was not violated by exercising jurisdiction in *Frescala*, 785 F.Supp. at 1372.

2. This complicates what otherwise might be a routine analysis. California would apparently be the place of breach. However, defendant wishes to limit jurisdiction to its home territory, and would doubtless object to being sued where it allegedly committed a wrongful act; i.e., breach of contract. And California as the place of payment could probably not be a forum for this litigation. *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 291 (1st Cir.1999).

be based on the fact that Loadstar made a contract within this state. Nonetheless, in making a final determination as to whether personal jurisdiction over Loadstar has been acquired, it must also be determined whether the principles of due process have been satisfied. *Harrison v. Union Pacific R. Co.,* 45 F.Supp.2d 680, 682 (E.D.Mo. 1999).

*Due Process*

 In judging minimum contacts to satisfy due process requirements, a court properly focuses on the relationship among the defendant, the forum, and the litigation. *Institutional Food,* 747 F.2d at 455; *citing, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Nonresident defendants must have certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* Sufficient contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A finding of reasonable anticipation requires that there be "some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

 The standard for "minimum contacts" have devolved into a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Id.* However, "even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Institutional Food,* 747 F.2d at 455; *quoting, World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In the Eighth Circuit, the "minimum contacts" determination and the "fair play and substantial justice" determination have been collapsed into one, with the five-factor analysis answering both inquiries. *RDO Foods Co. v. United Brands Intern., Inc.,* 194 F.Supp.2d 962, 967 (D.N.D.2002).

Tiger argues that both the purchase orders and the acknowledgment orders indicated that the tractors were to be shipped "FOB factory." According to Tiger, it delivered the tractors to the carrier at its factory in Missouri, at which time, Loadstar agents took custody and control over the tractors. Tiger therefore reasons that Loadstar transacted business in Missouri. As previously noted however, Alfred Vanderhill averred that Tiger shipped the tractors from its factory in Missouri to Loadstar's customers located outside of Missouri. When there is a contest between the parties' conflicting affidavits, all factual conflicts must be resolved in the plaintiff's favor; however, here, as previously noted, two of the purchase orders corroborate Loadstar's version of the events. But even if Tiger made shipping arrangements in Missouri, guidance was surely from Loadstar, the purchaser, effectively exercised in Missouri. On the remaining purchase order Loadstar listed "will advise" as to delivery, thereby controlling product delivery in Missouri.

Tiger further argues that due to the sizable amounts covered by the contracts

pertaining to goods manufactured in Missouri by a Missouri corporation, it would not be unfair to subject Loadstar to this court's jurisdiction. In other words, Tiger contends that its performance under the contract within the forum state supplies the requisite minimum contacts. *Scullin Steel*, 676 F.2d at 313. This argument is weakened, however, because the critical relationship is that "among the defendant, the forum, and the litigation." *Scullin Steel*, at 313; *citing, Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Moreover, it has been held that "solicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a (nonresident) seller soliciting the right to ship goods into the forum state." *Scullin Steel*, at 314; *quoting, Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1214 (8th Cir.1977).

■ In addition, simple use of the telephone and the mail are insufficient to justify exercise of personal jurisdiction under the due process clause. *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir.2002). But unlike the *Porter* case, where an Ohio purchaser in a series of transactions causes manufacturing in Missouri by a contract created here, causes delivery to be made in Missouri for out-of-state use, and allegedly breaches its contract to make out-of-state payment, it cannot fairly insist on being sued in its home territory. While California has some claim to being the State where Loadstar might expect to be "haled into court" I conclude there are enough significant Missouri contacts, including the triggering fact of a Missouri contract, for the Missouri seller to file suit against the purchaser in this State. Defendant may

have been pulling the strings in Ohio, but it was retaining control and inducing substantial conduct in Missouri, and cannot fairly deny it had established a "substantial and continuing relationship with a party in the forum state." Compare, *CPC–Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241 (8th Cir.1990) (no Missouri jurisdiction when manufacturing and shipping were in North Carolina).[3]

Accordingly, it is hereby

ORDERED that the motion to dismiss for lack of personal jurisdiction (ECF doc. 6) is DENIED.

---

**3.** Candor suggests that I acknowledge finding *Scullin* a close case, and that the distinctions here and in *Frescala*, are somewhat strained. Solicitation, negotiation and signing in Pennsylvania seems to have been controlling in *Scullin*, making it unfair to pull the *Scullin* case defendant out of that state for trial elsewhere. But the law clearly requires balancing all factors, not relying on only one, and I am quite comfortable with this result.