626 F.Supp. 379 (1986)
ST. LOUIS FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,
v.
SILVERADO BANKING, SAVINGS AND LOAN ASSOCIATION, Defendant.
No. 85-1835C(1).
United States District Court, E.D. Missouri, E.D.
January 27, 1986.
*380 Albert E. Schoenbeck, St. Louis, Mo., for plaintiff.
Joseph P. Conran, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This cause is before the Court on the motion of defendant to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this case to the District of Colorado under 28 U.S.C. § 1404(a) (1982).
Plaintiff St. Louis Federal Savings and Loan Association (St. Louis Federal), a federally chartered association with its principal office in Clayton, Missouri, sues for specific performance of a contract between itself and Silverado Banking, Savings and Loan Association (Silverado), an association *381 chartered by the State of Colorado and with its principal office in Denver, Colorado. As explained below, defendant's motions are denied.
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the long-arm statute; and second, whether the exercise of personal jurisdiction over defendant violates the due process clause of the fourteenth amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982). Plaintiff, the party that is seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the party challenging the jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); Greycas, Inc. v. Anderson, 584 F.Supp. 894, 895-96 (E.D.Mo.1984); 4 Wright & Miller, Federal Practice and Procedure § 1068 at 250 (1969).
Missouri's Long-Arm statute provides in part:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.
2. ....
3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
Mo.Rev.Stat. § 506.500 (Supp.1984).
The due process clause of the fourteenth amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. The due process clause requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. Accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, 80 U.S. 408, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such *382 that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to jurisdiction in the other state for the consequences of their activities. Burger King Corp. v. Rudzewicz, ___ U.S. ___, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d at 1340. The first three factors are of primary importance and the last two are of secondary importance. Id.
This Court's evaluation of defendant's contacts with Missouri begins with a brief overview of the facts underlying plaintiff's causes of action. During March and April of 1982, Silverado sold to St. Louis Federal an 80% interest in six construction loans. These loans financed construction of housing developments in Colorado. Silverado sold the participation interests pursuant to a Loan Participation Agreement executed by Emmett A. Capstick, then President of St. Louis Federal, and Russell M. Murray, Vice President of Silverado. The agreement was signed in Colorado by Murray on behalf of Silverado, then sent to Clayton where it was signed by Capstick on behalf of St. Louis Federal.
Sometime in early 1982, Murray and Michael J. Wise, Chairman of the Board of Silverado, traveled to the home office of St. Louis Federal in Clayton, Missouri. There, they solicited St. Louis Federal's participation in the construction loans. Also, they began to negotiate the terms of a Loan Participation Agreement. Two or three meetings between Silverado and St. Louis Federal representatives were held in Clayton to negotiate the terms of the agreement.
Between October 1, 1982 and May 9, 1985, officers of Silverado called and wrote St. Louis Federal at least 54 times to request funds for Stanton Farms, one of the construction projects. As a general practice, Silverado called St. Louis Federal by telephone to request funds and, then, sent supporting documentation. Upon receiving these documents, loan officers of St. Louis Federal audited the materials and authorized payment. Each transaction was completed when St. Louis Federal wired funds to Silverado's account in Denver. Silverado and St. Louis Federal conducted similar transactions with regard to the five other loans.
On April 11, 1985, Silverado, through its attorneys, proposed a modification of the loan agreement. On May 30, 1985, Sid Roach, Vice President of Silverado and Ron Jacobs, attorney for Silverado, met with representatives of St. Louis Federal to discuss the proposed modification. This meeting occurred at the St. Louis Federal home office in Clayton.
Plaintiff predicates jurisdiction upon the solicitation, negotiation, execution, and performance of the Loan Participation Agreement in Missouri and upon the subsequent negotiations to modify the agreement. As defendant argues, the mere act of signing the contract in Missouri does not satisfy the Missouri long-arm statute.
Under Missouri law, the place of contract is where the final act occurs which makes a binding contract. Servco Equipment Co. v. C.M. Lingle Co., 487 S.W.2d 869, 870 (Mo.Ct.App.1972), citing Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S.W.2d 1036 (1933); see Commercial Design, Inc. v. Dean/Dale and Dean Architects, 584 F.Supp. 890 (contract made in Missouri when plaintiff accepted counteroffer *383 by initialing defendant's reply letter in Missouri).
Though Silverado signed the agreement in Colorado, the contract was then sent to St. Louis Federal and signed by its President in Clayton. This signature constitutes the final act in the formation of the contract. Moreover, Silverado solicited and negotiated the agreement in Missouri. Therefore, Silverado was properly served under § 506.500(1)[1], and this Court may exercise jurisdiction over it.
Plaintiff also relies upon § 506.500(1)[2], arguing that Silverado conducted business in Missouri. Defendant denies that its contacts were sufficient to satisfy this portion of the long-arm statute.
Missouri courts have interpreted the terms of § 506.500 broadly to extend the jurisdiction of Missouri courts over non-resident defendants to the extent permissible under the due process clause. State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984); State ex rel. Deere & Co. v. Pinnell, 454 S.W.2d 889. A single meeting in this state has been held sufficient to satisfy the transaction of business requirement of § 506.500. State ex rel Farmland Industries, Inc. v. Elliott, 560 S.W. 60, 63 (Mo. Ct.App.1977). See also Charles Schmitt and Co. v. Barrett, 670 F.2d 802 (8th Cir. 1982); Greycas, Inc. v. Anderson, 584 F.Supp. 894, 896 (E.D.Mo.1984).
Silverado solicited the participation of St. Louis Federal in the construction loans during meetings in Missouri; Silverado negotiated the basic terms of the agreement in Missouri; Silverado made numerous telephone calls to St. Louis Federal in Missouri; and, as a result, St. Louis Federal performed a significant portion of the contract in Missouri. In addition, officers of Silverado traveled to Missouri to negotiate a modification in the original agreement. These contacts more than satisfy the transaction of business requirement of § 506.500(1)[2].
On the basis of the above facts, this Court finds the exercise of jurisdiction over defendants comports with the requirements of due process. Defendant's contacts with Missouri and with St. Louis Federal were far from random, fortuitous, or attenuated. See Burger King, 105 S.Ct. at 2186. On the contrary, Silverado purposefully solicited contacts with Missouri and maintained continuous communication with St. Louis Federal over the course of the agreement. When defendant sought to alter its contract, it again sent employees to Missouri to negotiate the modification. Moreover, Missouri has a strong interest in providing a forum for its residents to litigate a dispute arising out of a Missouri contract substantially performed in Missouri. Accordingly, defendant's motion to dismiss is denied.
Defendant seeks to transfer this case to the District of Colorado under 28 U.S.C. § 1404(a). As defendant argues, transfer is warranted because the parties chose Colorado law to govern the contract and because the pertinent witnesses and documents are located in Colorado. The decision to transfer a case lies within the discretion of the trial court and unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In this case, the location of witnesses and documents is not dispositive. According to the affidavits of both parties, relevant evidence will be found in Missouri and Illinois, as well as Colorado.
The participation agreement specifies that Colorado law governs disputes arising out of the agreement. Although choice of law provisions are relevant to venue, such provisions are not dispositive. See O'Neill v. Stanwood Corp., 577 F.Supp. 1001, 1003 (S.D.N.Y.1984) (choice of law clause not dispositive where no complex issues of foreign law are presented). As a suit for specific performance, this litigation presents no novel or complex issues. Therefore, application of Colorado law should present no unique difficulties for this Court. Accordingly, defendant's *384 motion to transfer under § 1404(a) is denied.