895 F.Supp. 249 (1995)
GENERAL COMMITTEE OF ADJUSTMENT GO-386, et al., Plaintiffs,
v.
BURLINGTON NORTHERN RAILROAD, et al., Defendants.
No. 4:95CV688SNL.
United States District Court, E.D. Missouri, Eastern Division.
August 2, 1995.
*250 Bruce S. Feldacker, Feldacker and Cohen, St. Louis, MO, John Clarke, Jr., Highsaw and Mahoney, Washington, DC, for plaintiffs.
William A. Brasher, Paul E. Littleton, Brasher Law Firm, St. Louis, MO, for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiffs have filed this declaratory judgment action seeking to compel the defendant railroads to bargain "locally" with the plaintiffs rather than on a "multi-employer/national" basis. This matter is before the Court on the defendants' motion to transfer this cause of action to the United States District Court for the District of Columbia (# 6), filed May 9, 1995. Responsive pleadings have been filed.
This is a complex labor union controversy involving not only the named litigants, but the railway industry as a whole as regards the current round of collective bargaining in the railway industry. For purposes of the present issues at hand, the following is a condensed recitation of facts material to this Court's ultimate determination of the defendant railroad carriers' motion to transfer.
The plaintiffs are the local union committees of the national United Transportation Union (UTU). They aver that the defendant railroad carriers are obliged to bargain with them individually in the current round of railroad industry-wide collective bargaining, rather than in multi-employer bargaining (a/ k/a "national bargaining or handling") with the UTU. The defendant railroad carriers contend that the long-standing practice and policy of the railroad industry, and the Railway Labor Act, requires the UTU, as the sole certified representative of the carriers' trainmen and yardmen employees, to bargain nationally with the carriers' bargaining agent, the National Carriers' Conference Committee (NCCC).
The current collective bargaining disputes, primarily general wages and rules, involve all thirteen (13) of the standard national railway labor unions and approximately thirty (30) carriers. These disputes came to the forefront on November 1, 1994 when the old collective bargaining agreements expired. On that date, the railroad carriers or the NCCC[1] and the unions served each other with § 6 notices[2] proposing new collective bargaining agreements. These proposals were for the most part formal presentations of health, welfare, and wage proposals discussed *251 prior to the expiration of the old collective bargaining agreements.
The UTU, as well as most of the other labor organizations, are currently actively engaged in national handling with the NCCC. However, two labor organizations, the Brotherhood of Maintenance of Way Employees (BMWE) and the Brotherhood of Locomotive Engineers (BLE) do not favor national handling. In fact, on October 27, 1994 the BMWE openly refused to engage in national handling insisting instead that the railroad carriers bargain individually with the local committees of the BMWE.
On November 1, 1994, in addition to the serving of Section 6 notices, all of the railroad carriers (including the defendants) represented by the NCCC filed suit in the District Court of the District of Columbia seeking a court order requiring the BMWE to bargain nationally in the current round of collective bargaining. Two days later, in the United States District Court for the Eastern District of Michigan, the BLE filed suit against four (4) railroad carriers (who are plaintiffs in the BMWE action in D.C.) seeking to require them to bargain locally instead of nationally.[3] A short time later the BMWE filed two lawsuits: one in the Eastern District of Michigan seeking to compel four railroad carriers (who are plaintiffs in the BMWE action in D.C.) to bargain locally[4]; and one in this district seeking to compel four other railroad carriers (who are plaintiffs in the BMWE action in D.C., as well as being two of the present defendants) to bargain locally.[5] Both the BMWE and BLE actions in the Eastern District of Michigan were transferred to the D.C. district court on the defendants' motions. The BMWE's action in this district was dismissed voluntarily by the plaintiff BMWE. Furthermore, the BMWE's motion to transfer the carriers' D.C. action to the court in Michigan was denied. Consequently, all three actions addressing the issue of national handling v. local bargaining in the current round of collective bargaining in the railway industry are presently pending before Judge Thomas F. Hogan of the District Court for the District of Columbia.
Approximately four months after the transfer of the Michigan cases to the D.C. District Court, and two months after the D.C. District Court denied a transfer of its original case to the Eastern District of Michigan court, counsel who had represented the BMWE filed the instant lawsuit.
The defendants seek a change of venue i.e. a transfer of this case to the District Court for the District of Columbia. They contend that not only have the requirements of a transfer under 28 U.S.C. § 1404(a) been met, but that the jurisdiction of the D.C. court takes priority because not only was the first case raising the issue of national handling v. local bargaining filed in D.C. but the other cases raising this issue have been transferred to that court. Plaintiffs contend that the "first-to-file" rule is inapplicable because the issue and parties are different in this case from the D.C. cases; and that the requirements for a § 1404(a) transfer of venue have not been met.
In instances wherein parallel litigation has been instituted by the same or different parties in different courts, the "first-filed rule" gives priority to choice of venue of the party who first established jurisdiction. Northwest Airlines v. American Airlines, 989 F.2d. 1002, 1004-1006 (8th Cir.1993); Orthmann v. Apple River Campground, 765 F.2d. 119, 121 (8th Cir.1985). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings; however, its application is not meant to be rigid, mechanical or inflexible but rather to serve as a means to facilitate sound judicial administration. Northwest Airlines, at 1005 citing Orthmann, at 121. "The prevailing standard is that `in the absence of compelling circumstances', the first-filed rule should apply." Northwest Airlines, at 1005 citing United States Fire Insurance Co. v. Goodyear Tire *252 & Rubber Co., 920 F.2d. 487, 488-89 (8th Cir.1990) quoting Merrill Lynch, Pierce, Fenner & Smith v. Haydu, 675 F.2d. 1169, 1174 (11th Cir.1982).
The Court has carefully reviewed the pleadings in this case, including the submitted pleadings referencing the decision by Judge Rosen in Michigan to transfer his cases to the D.C. court and the decision by Judge Hogan to retain the case originally filed in his court. It is clear to this Court that all of these cases are premised on the same basic issue: whether the railroad carriers can be compelled to negotiate locally, instead of nationally through their designated representative the NCCC, in the current round of collective bargaining in the railway industries. The Court agrees with Judge Rosen's observations that the legal issue in dispute and the industry affected are identical in all of these cases. Furthermore, although the parties may differ in the cases, they are all carriers and unions or local committees in the railway industry with a significant stake in the resolution of this issue. The Court concurs with Judge Rosen determination that the issue involved is "one of national ramifications" that requires a single definitive ruling by a single court "lest bargaining come to a halt due to potentially conflicting proceedings and edicts." Defendants' Exhibit 4, BLE v. Conrail, slip op. at 8, 11.
Finally, this Court does not believe that the BMWE case was filed in D.C. prematurely. The plaintiffs do not dispute the fact that the BMWE had clearly made it known that it did not intend to bargain nationally prior to the filing of the lawsuit. The fact that defendants may believe that the law in D.C. is more favorable to their position is not fatal to the application of the first-filed rule; especially in light of the fact that the plaintiffs admit that they filed suit in the Sixth and Eighth Circuit to take advantage of certain decisions they believe favorable to their position. Frankly, all the parties involved in these ligations are "guilty" of forum-shopping. However, the fact remains that the BMWE case was filed first in the D.C. district court and venue has never been contested in that court.
However, as stated before, absent compelling reasons, the first-filed rule should be applied. In the instant case, compelling reasons for not applying the rule may be grounded on whether the defendants have met the requirements of § 1404(a) in seeking to transfer this case to the D.C. district court.
Defendants seek transfer pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
In making a § 1404(a) analysis, a plaintiff's choice of proper forum is given great weight and should not be disturbed unless the movant makes a clear showing that the balance of interest weighs in favor of the movant. Houk v. Kimberly-Clark Corp., 613 F.Supp. 923 (W.D.Mo.1985). The interests to be considered include the convenience of the parties and witnesses, the availability of judicial process to compel attendance of hostile witnesses, the governing law, relative ease of access to sources of proof, possibility of delay and prejudice if a transfer is granted, and practical considerations of cost and efficiency. New Dawn Natural Foods v. Natural Nectar Corp., 670 F.Supp. 869, 873 (E.D.Mo. 1987); Midwest Mechanical Contractors, Inc. v. Tampa Constructors, 659 F.Supp. 526, 532 (W.D.Mo.1987); Houk, at 927. Merely shifting the burden of inconvenience and cost is not enough to grant a transfer. Houk, at 927-928.
Although a change in venue is well within the trial court's discretion, it should not be freely granted. In Re Nine Mile, Ltd., 692 F.2d. 56, 61 (8th Cir.1982). After weighing the relevant factors, unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should be left undisturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); New Dawn, 670 F.Supp. at 874; St. Louis Federal Savings and Loan v. Silverado Banking, 626 F.Supp. 379, 383 (E.D.Mo. 1986).
*253 The Court has reviewed the parties' pleadings and finds that the balance of relevant factors tips in the defendants' favor. After a careful review of the relevant pleadings in this case, it is clear to this Court that this lawsuit could have been brought initially before the district court in Washington, D.C. The District of Columbia's long-arm statute, D.C.Code Ann. § 13-421, undeniably establishes personal jurisdiction over the defendants because they have for a number of years transacted business, i.e. national handling of railroad industry labor disputes and collective bargaining agreements, through their agent, the N.C.C.C., in Washington, D.C. Furthermore, venue is proper in Washington, D.C. under 28 U.S.C. § 1391(b)(2) because the main issue in this case concerns the current round of collective bargaining and the defendants' insistence that such talks be conducted in Washington, D.C. through their representative as in past years.
None of the plaintiffs have their headquarters or primary offices in Missouri. None of the defendants have their headquarters or labor relations offices in Missouri. The defendants' bargaining representative is located in Washington, D.C. The defendants' records regarding collective bargaining are located in Washington, D.C. The traditional site for national bargaining, and where currently national bargaining is taking place among many of the carriers (including these defendants) and several of the national railroad unions, is in Washington, D.C. Lead counsel for both the plaintiffs and the defendants are located in Washington, D.C. Most of the defendants' witnesses knowledgeable about the railroad industry and its labor practices, including the negotiations and mediation of collective bargaining agreements, reside and/or work in or near Washington, D.C.
While it is true that the defendants' lines run through this district, plaintiffs concede that only 15% of employees with interests in this dispute reside or work in Missouri. The plaintiffs have not indicated if any of these Missouri employees will testify or the importance of their testimony to this case, and given the nature of this suit, i.e. a labor dispute involving the manner in which the current collective bargaining agreements will be negotiated, the Court believes such testimony would be most likely factual in nature and not especially crucial to the resolution of the issue at hand. Furthermore, the cases currently pending before the district court in Washington, D.C. involve railroad employees primarily in and around Michigan, and the ramifications of these cases affect the interests of railroad employees nationwide. There is nothing before this Court which leads this Court to believe that the district court in Washington, D.C. cannot adequately consider the interests of the Missouri railroad employees, as well as the remaining out-of-state employees whose interests are represented by the other plaintiff local committees in the instant case.
Finally, the plaintiffs contend that the Washington, D.C. case has come to a "halt" or is at an "impasse". The pleadings filed in this case indicate that this is not exactly a correct assessment of the status of the litigation pending before Judge Hogan. It appears that hearings have taken place regarding the factual background of the issue pertaining to national handling v. local bargaining. An expedited briefing schedule for summary judgment motions in the BMWE case has been set. A scheduling order for discovery and substantive motions in the BLE case is in place. Discovery has been ongoing in the Washington, D.C. cases. On the other hand, little has been done in the instant case. No scheduling order has been issued; no trial date has been set. This Court's review of the instant case leads it to believe that this case is a complicated matter, involving complex issues regarding labor negotiations and union representation. Given this Court's heavy trial schedule, the plaintiffs' desire for a quick resolution of this matter is simply not feasible. A probable trial date is at least eighteen months to two years away.
The Court finds that no compelling reasons exist to thwart the application of the "first-filed rule" in this case. Furthermore, it is clear to this Court that for the convenience of the parties and probable witnesses, and in the interests of judicial efficiency and swift resolution of this matter, this case *254 should be tried in Washington, D.C. The Court will grant the defendants' motion to transfer this case to the District Court for the District of Columbia.
NOTES
[1] The NCCC is the bargaining agent for several carriers, including the defendants. However, it is not the bargaining agent for all 30 railway carriers.
[2] On November 1, 1994 the old collective bargaining agreements simultaneously expired. Under the provisions of Section 6 of the Railway Labor Act, 45 U.S.C. § 151 et seq., new agreements were proposed. Also, on November 1, 1994 the carriers' group (including these defendants) served each of the labor organizations with a Section 6 notice designating the NCCC as their national bargaining representative for the current round of collective bargaining in the railway industry.
[3] BLE, et al. v. Consolidated Rail Corp., et al., Cause No. 94CV74457-DT.
[4] BMWE, et al. v. C & NW, et al., Cause No. 94-CV-7475.
[5] BMWE, et al. v. Alton & Southern Ry. Co., 4:94CV2294.