176 F.Supp.2d 951 (2001)
ANHEUSER-BUSCH, INCORPORATED, Plaintiff,
v.
CITY MERCHANDISE, Defendant.
No. 4:00CV1977 RWS.
United States District Court, E.D. Missouri, Eastern Division.
October 26, 2001.
As Amended Nunc Pro Tunc January 2, 2002.
*952 *953 Edward Wierzbicki, Daniel Frohling and Beth Fulkerson of Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, Illinois, and Steven Sanders and Lisa Larkin of Williams, Venker & Sanders LLC, St. Louis, Missouri, for plaintiff.
Gabriel Fischbarg, New York, New York, and Jeffrey Kass, Lowenhaupt & Chasnoff LLC, St. Louis, Missouri, for defendant.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
Plaintiff Anheuser-Busch, Incorporated ("A-B") alleges that Defendant City Merchandise ("CM"), intentionally infringed upon A-B's BUDWEISER, KING OF BEERS, ANHEUSER-BUSCH, A and Eagle Design, BUDWEISER Scroll Design, and BUDWEISER Label Design trademarks and BUDWEISER trade dress. A-B alleges that CM has and continues to market, sell and distribute diecut postcards bearing A-B's identical and/or substantially indistinguishable trademark and trade dress.
This matter is before the Court on CM's Motion to Dismiss the Amended Complaint, or in the alternative, to Transfer to the Eastern District of New York. CM *954 challenges the personal jurisdiction of this Court claiming that it has not had sufficient contacts with Missouri to trigger Missouri's long arm statute or satisfy due process requirements.
The Court will deny CM's Motion to Dismiss for lack of personal jurisdiction. The Court will also deny CM's motion to transfer to the Eastern District of New York.

I. Facts
A-B filed this Complaint against CM on December 15, 2000 and amended its Complaint on March 28, 2001. A-B contends that this Court has subject matter jurisdiction pursuant to the Lanham Act claims, 15 U.S.C. § 1121, raised in the Complaint.
A-B is a Missouri corporation with its principal place of business in St. Louis, Missouri. A-B has been brewing and marketing beer for over 100 years and is the leading brewer and marketer of beer in the United States.
CM is a New York corporation with its principal place of business in Brooklyn, New York. CM is a wholesale distributor of New York City-oriented souvenir merchandise. The merchandise generally depicts tourist attractions in New York City.
A-B claims that CM's acts constitute trademark counterfeiting, trademark infringement, unfair competition, dilution, unjust enrichment and misappropriation of commercial value. A-B alleges that CM has and continues to market, sell and distribute postcard bearing the AB BUDWEISER, KING OF BEERS, ANHEUSER-BUSCH, A and Eagle Design, BUDWEISER Scroll Design, and BUDWEISER Label Design trademarks and BUDWEISER trade dress. A-B contends that the design on this postcard is identical and/or substantially indistinguishable to A-B's trademarks and trade dress.
On October 7, 1998, counsel for A-B sent a cease and desist letter regarding the postcards bearing the infringing design to Jack Gindi ("Gindi"), President of CM. In two affidavits dated November 23, 1998, Gindi represented that the postcards had been destroyed and that no infringing postcards remained in CM's inventory.[1]
On February 4, 1999, CM shipped 150 postcards to Ballwin, Missouri pursuant to a request by an A-B investigator. On October 20, 2000, an investigator for A-B also ordered 50 postcards bearing the infringing design directly from CM. The investigator received the postcards on November 9, 2000.
CM claims that it failed to remove the postcards from the shelves in the warehouse due to a clerical stock keeping error. Since October, 1998, CM's sales representatives have not offered the postcards for sale. Further, CM removed the postcard from its catalog and reprinted the catalog. In addition, the postcard has never been offered for sale on CM's website.
CM contends that the only sales of the postcards made after October, 1998 were to A-B's investigators. CM also notes that A-B's investigators requested the postcards by their SKU number. CM only has record of two sales. A-B claims, however, that CM sold the postcards to its investigators twice in Missouri and twice in Illinois.
CM alleges A-B did not inform CM or its counsel that the postcards were still available to be purchased. Instead, CM claims that A-B filed this lawsuit without any warning to CM.
*955 CM moves to dismiss or transfer this case because it does not believe that it has had sufficient contacts with Missouri to be subject to this Court's personal jurisdiction. A-B argues that this Court has personal jurisdiction over CM because it has admitted to infringing its trademark and trade dress. Therefore, A-B contends that CM committed an intentional tort with foreseeable effects in Missouri bringing its acts within Missouri's long arm statute.

II. Discussion

Personal Jurisdiction
CM claims that this Court has no personal jurisdiction over it because it does not have sufficient contacts with Missouri. CM claims that it conducted no business in Missouri, has not traveled to Missouri, has had no purchases made from Missouri, keeps no office in Missouri, holds no bank account in Missouri and has no target market in Missouri.
The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. May Dept. Stores Co. v. Wilansky, 900 F.Supp. 1154, 1159 (E.D.Mo.1995) (citing Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir.1982)). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 522 (8th Cir.1996). If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir.1991) (citing Watlow Electric Mfg. Co. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir.1988); Neiman v. Rudolf Wolff & Co., Ltd., 619 F.2d 1189, 1190 (7th Cir.), cert. denied, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980)).
The Eighth Circuit has recently stated that "[n]onresidents are subject to personal jurisdiction to the extent that state law allows." Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 2001 WL 436045, *4 (8th Cir. May 1, 2001) (citing Fed.R.Civ.P. 4(e)). Missouri liberally construes the provisions of its long-arm statute in order to exercise its jurisdiction "to the fullest extent permitted by the Due Process Clause, within the specific categories enumerated in the statute." May Dept. Stores, Co., 900 F.Supp. at 1159 (citing State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984)).
Missouri's long-arm statute provides in pertinent part:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agency does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
. . . . .
3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action *956 in which jurisdiction over him is based upon this section.
R.S.Mo. § 506.500.
The analysis to determine whether jurisdiction exists requires a two-step process. May Dept. Stores Co., 900 F.Supp. at 1159. First, the Court must determine whether the statute confers jurisdiction. Second, if so, the Court must determine whether exercising personal jurisdiction over the party would violate due process. Id. (citing Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 372-73 (8th Cir.1990)).
The Court must first determine whether A-B's pleadings, affidavits, and exhibits establish a prima facie showing that a tort was committed within the State of Missouri. See Dakota Industries, 946 F.2d at 1389.
"To commit a tortious act in Missouri, it is not necessary that the tortfeaser was actually present in Missouri, but only that the extra-territorial acts have consequences in the forum." Dakota Industries, 946 F.2d at 1389. To establish a prima facie tort case, the plaintiff is required to alleged facts from which the elements of a tort claim are satisfied. Id. The Lanham Act, 15 U.S.C. § 1114 provides:
(1) Any person who shall, without the consent of the registrant 
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.
15 U.S.C. § 1125(a) provides:
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which 
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(c) provides:
(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if *957 such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.
"This court has held that infringing upon a trademark is grounds for personal jurisdiction under `the commission of a tortious act' provision of Missouri's long-arm statute." Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc., 96 F.Supp.2d 919, 921 (E.D.Mo.2000) (citing Maritz v. Cybergold, Inc., 947 F.Supp. 1328, 1331 (E.D.Mo. 1996)). CM does not deny its infringing actions, but claims the continued sales were unintentional.
Viewing the facts in the light most favorable to A-B for the purpose of this analysis, the Court finds that A-B has made the requisite prima facie showing that the alleged tort falls within a provision of the Missouri long-arm statute.[2]
Next, the Court must determine whether due process limits the Court's exercise of personal jurisdiction over CM. Due process allows a state to exercise personal jurisdiction over a nonresident when the nonresident has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).
A nonresident must meet the "minimum contacts" standard before being subjected to a state's jurisdiction. Dakota Industries, 946 F.2d at 1389. "This requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations omitted). Once minimum contacts have been established, the court must determine whether conferring jurisdiction is in accordance with "fair play and substantial justice." Id. (citing Burger King, 471 U.S. at 476, 105 S.Ct. 2174 (quoting International Shoe, 326 U.S. at 320, 66 S.Ct. 154))).
First, A-B argues that a single act or transaction within the forum state is enough to satisfy the minimum contacts requirement where the cause of action arises out of that act or transaction. Peabody, 808 F.Supp. at 1437 ("A single tortious act is sufficient to support personal jurisdiction consistent with due process standards") (quoting Nelson v. R. Greenspan & Co., 613 F.Supp. 342, 346 (E.D.Mo. 1985)). CM points out that only four sales were made after Gindi represented to A-B that the postcards had been destroyed. CM argues that these sales are insufficient to confer personal jurisdiction because all four sales were made to A-B investigators. Further, only two of those purchases were delivered to Missouri locations. A-B argues that the sales are enough to confer personal jurisdiction in this Court.
The Eighth Circuit has adopted a test to evaluate whether jurisdiction is proper under the Due Process Clause. Dakota Industries, 946 F.2d at 1390 (citing Land-O-Nod Co. v. Bassett Furniture Industries, 708 F.2d 1338 (8th Cir.1983)). *958 The factors are as follows: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Id. The first three factors are the most important. Id.
The nature and quality of CM's contacts with Missouri are crucial to this analysis. CM argues that it has no other record of sales to Missouri and it does not target Missouri in its marketing efforts. The Eighth Circuit Court of Appeals recently held, however, that "[a]lthough the manufacturer ... had no office, agent, employee, property, or advertising or solicitation campaigns in [the forum state], we found that the lack of a direct marketing presence did not necessarily mean that the manufacturer had not purposefully marketed its product in that state." Clune v. Alimak AB, 233 F.3d 538, 543 (8th Cir. 2000). Further, the Eighth Circuit, in Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610 (8th Cir.1994), quoted a Seventh Circuit opinion finding that "the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so. A seller at the head of a distribution network thus satisfies the requisite foreseeability of due process where it `delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers in the forum state.'" 25 F.3d at 613 (quoting Giotis v. Apollo of the Ozarks, Inc., 800 F.2d 660, 667 (7th Cir.1986) (quoting Burger King, 471 U.S. at 473, 105 S.Ct. 2174)).
In this case, not only did CM place its alleged infringing postcard into the stream of commerce, but it intentionally distributed the postcards to Missouri, the forum state. It was certainly foreseeable that the postcards could be purchased by consumers in Missouri since they were specifically ordered from and delivered to Missouri.
The quantity of the contacts with Missouri are few, but these purchases clearly relate to the cause of action since the sales were of the infringing postcards at issue in this case. The Clune court found that personal jurisdiction was appropriate when between 20 and 40 of 700 construction hoists ended up in Missouri. 233 F.3d at 543-44. The amount of hoists in Missouri equals about 3.5% to 5.5% of the total amount of hoists distributed to the United States. In this case, 200 of the 5,000 postcards ordered ended up in Missouri totaling about 4% of the total number of CM's postcards.
Missouri has a strong the interest in providing a forum for A-B to protect its patents. A-B is a very large employer and distributer in Missouri and it would certainly be in Missouri's interest to protect this business from infringement. Finally, as to the convenience of the parties, this case splits down party lines. It would obviously be more convenient for A-B to litigate in Missouri as most of their personnel that would testify at trial reside in Missouri. Gindi, CM's President, would be inconvenienced as he resides in New York.
The first three factors are the most important. See Dakota Industries, 946 F.2d at 1390. In this case, they are sufficient to confer personal jurisdiction.
Further, A-B contends that CM sales outside Missouri also tortiously injured A-B. A-B argues that the "effects" test confers personal jurisdiction in this Court because CM infringed A-B's trademark and trade dress for the very purpose of having the consequences of its actions felt in Missouri by A-B. See Dakota Industries, 946 F.2d at 1390-91.
*959 The United States Supreme Court, in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), adopted the "effects" test which allows a state to confer personal jurisdiction over a non-resident whose acts "are performed for the very purpose of having their consequences felt in the forum state." Dakota Industries, 946 F.2d at 1390-91 (quoting Brainerd v. Governors of the University of Alberta, 873 F.2d 1257, 1260 (9th Cir.1989)). The Supreme Court in Calder found that the petitioners knew their conduct would have a "potentially devastating impact" on the respondent, that the "brunt of the injury would be felt by the respondent" in the forum state where she lived and worked and where the petitioners' product had the largest circulation. 465 U.S. at 789-90, 104 S.Ct. 1482. Further, the Court made "a sharp distinction between `mere untargeted negligence' and `intentional, and allegedly tortious, actions' aimed expressly at the forum state." Dakota, 946 F.2d at 1390 (citing Calder, 465 U.S. at 789, 104 S.Ct. 1482).
Viewing the facts in the light most favorable to A-B, CM committed an intentional tort of infringement. The intent to harm A-B by infringing upon its trademark and trade dress can easily be interpreted as aiming its actions at the state in which A-B has its principal place of business. Further, the "brunt of the injury" would be felt in Missouri because the trademark and trade dress infringed upon is owned by A-B, a corporation headquartered in Missouri.
Based upon the Eighth Circuit's five-factor test and the "effects" test, the Court concludes that due process does not preclude this Court from exercising its jurisdiction over CM. Further, traditional notions of "fair play and substantial justice" would not be compromised by this Court exercising its jurisdiction over CM.

Transfer
Defendants also seek transfer under 28 U.S.C. § 1404(a) which provides:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
In considering a § 1404(a) motion, the Court must give great weight to the plaintiff's choice of a proper venue. General Committee of Adjustment v. Burlington N. R.R., 895 F.Supp. 249, 252 (E.D.Mo.1995). That choice should only be disturbed upon a clear showing that the balance of interests weighs in favor of the movant's choice of venue. General Committee, 895 F.Supp. at 252. The interests which the Court should consider include: 1) the convenience of the parties; 2) the convenience of non-party witnesses; 3) the availability of judicial process to compel testimony from hostile witnesses; 4) the governing law; 5) relative ease of access to sources of proof; 6) possibility of delay and prejudice if a transfer is granted; and 7) practical considerations of cost and efficiency. Id. The "primary, if not most important" of these interests is the convenience of the witnesses. May Dept. Stores Co., 900 F.Supp. at 1165. Further, unless the balance of interests is strongly in favor of the movant, the plaintiff's choice of forum should prevail. General Committee, 895 F.Supp. at 252.
If the case remains in Missouri, CM will be inconvenienced. If the case is transferred to New York, A-B will be inconvenienced. In its Rule 26 disclosures, CM only listed Gindi, CM's President, as a potential witness in this case. A-B, however, disclosed five A-B employees as potential witnesses. As a result, A-B would have to require more witnesses to travel than CM.
*960 The parties do not address the availability of judicial process to compel testimony from hostile witnesses. A-B argues that Missouri law governs this case, while CM argues New York law govern this case. Both parties argue that relevant documentation is located in their respective states. A-B argues that the Eastern District of Missouri processes cases faster, while CM contends that is not necessarily true. Again, regardless of location, one party will be inconvenienced depending on which state the case is heard.
Giving great weight to A-B's choice of venue and noting that most of the witnesses in this matter reside in Missouri, the Court will not transfer this case to the Eastern District of New York.

IV. Conclusion
The Court will deny the CM's Motion to Dismiss the Amended Complaint, or in the alternative, to Transfer to the Eastern District of New York for the reasons set forth above.
Accordingly,
IT IS HEREBY ORDERED that Defendant Anheuser-Busch, Incorporated's Motion to Dismiss the Amended Complaint [# 20-1] is DENIED.
IT IS FURTHER ORDERED that Defendant Anheuser-Busch, Incorporated's Motion to Transfer to the Eastern District of New York [# 20-2] is DENIED.
NOTES
[1] Gindi stated that 5,000 postcards were purchased by CM. Gindi explained that 1,200 postcards were sold and 3,800 postcards were destroyed.
[2] A-B also asserts Missouri state law claims in connection with these Lanham Act claims. In addition to the Lanham Act claims, A-B brings a cause of action for unjust enrichment and misappropriation of commercial value. Because the Court has found that A-B has satisfied its prima facie showing on the Lanham Act claims, the Court will not analyze the elements of these similar state law claims for purposes of personal jurisdiction.