613 F.Supp. 1082 (1985)
TAX LEASE UNDERWRITERS, INC., et al., Plaintiffs,
v.
BLACKWALL GREEN, LTD., et al., Defendants.
No. 83-2448C(1).
United States District Court, E.D. Missouri, E.D.
July 22, 1985.
*1083 *1084 Veryl Riddle, J. Thomas Archer, and Gerard T. Carmody, St. Louis, Mo., for plaintiffs.
William G. Ohlhausen, Jeffrey B. Hunt, Frank N. Gundlach, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This matter is now before the Court on the motion of defendant Thomas J. Gallagher, Jr., to dismiss for lack of in personam jurisdiction. Defendant argues that he is not subject to service of process pursuant to Missouri's long-arm statute and that this Court's exercise of personal jurisdiction over him does not comport with the requirements of due process. The parties have submitted voluminous documents and memoranda regarding the motion.
Plaintiffs Tax Lease Underwriters, Inc. (TLU) and Tax Lease Management Corporation (TLM) are Colorado corporations but maintain their principal place of business in Missouri. Arthur A. Blumeyer, III is President of both companies. TLU was created to market a new insurance concept known as Safe Harbor Tax Leases (TBT insurance) in the United States. TLM was to conduct monitoring activities for the insurance. Underwriters at Lloyd's in London underwrote the TBT insurance policies, while defendant Blackwall Green, Ltd., which is also based in London brokered the policies. Plaintiffs filed the instant action against Blackwall for unpaid commissions arising from the placement of TBT insurance in the United States. Plaintiffs have additionally filed tort claims against Blackwall, John R.D. Green and Thomas Gallagher for civil conspiracy and acts of fraud and against Gallagher alone for breach of fiduciary duties and intentional interference with contract. Finally, plaintiffs have asserted a claim against all defendants for recovery of the fair and reasonable value of the materials and services rendered.
Defendant Gallagher is a tax lawyer in Washington, D.C., who represented the insurance Underwriters at Lloyd's with respect to TBT insurance transactions. He has never been to Missouri, and maintains that he has not practiced law or transacted any business in Missouri. He argues in the instant motion that the complaint against him should be dismissed because he has insufficient contact with Missouri to warrant the exercise of this Court's jurisdiction over him.
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the long-arm statute; and second, whether the exercise of personal jurisdiction over defendant violates the due process clause of the fourteenth amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982). Plaintiff, the party that is seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the party challenging the jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); Greycas, Inc. v. Anderson, 584 F.Supp. 894, 895-96 (E.D.Mo.1984); 4 *1085 Wright & Miller, Federal Practice and Procedure: Civil § 1068 at 250 (1969).
Missouri's Long-Arm statute provides:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
§ 506.500, R.S.Mo. (1982).
The due process clause of the fourteenth amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. The due process clause requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. Accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d at 1340. The first three factors are of primary importance and the last two are of secondary importance. Id.
Plaintiffs have submitted an affidavit by Arthur Blumeyer to demonstrate that Mr. Gallagher's ties with TLU and TLM, the St. Louis based corporations were indeed significant. In fact, according to plaintiffs' affidavits, Gallagher played an instrumental role in the creation, incorporation and operation of TLU and TLM. Gallagher telephoned Mr. Blumeyer on several occasions and met with him and two other individuals to discuss and agree upon a business plan to promote TBT insurance. Pursuant to this plan, Gallagher agreed to incorporate a company and to obtain all permits or licenses necessary for the company to legally promote and monitor TBT insurance. The company would operate from a principal place of business in St. Louis and Mr. Blumeyer would serve as its President. In addition, Gallagher specifically requested an equity interest of 20% of *1086 the company's stock. Gallagher also agreed to draft the initial policy wording and to serve as an officer and director of the company.
Subsequent to these tentative arrangements, Blumeyer and Gallagher traveled to London to discuss certain matters with various representatives from Blackwall. In his affidavit, Mr. Blumeyer affirmed that James Green of Blackwall proposed the formation of two companies instead of one for the exclusive handling of TBT insurance activities in the United States. Mr. Green proposed the names TLU and TLM for the companies at that time. The following month, Blumeyer and Gallagher returned to London for further discussions with Blackwall regarding the interrelationship between Blackwall, TLU and TLM. The parties agreed upon the fees payable to TLU for marketing TBT insurance and to TLM for its monitoring activities. Also, the processing fee for applications submitted by potential insureds was determined. Gallagher prepared a format for the flow of information and moneys in the business plan. Plaintiffs submitted some materials to show that the parties understood that documents and moneys would flow directly through TLU and TLM in St. Louis County, Missouri.
During the planning stage, Gallagher was a tax attorney in Denver, Colorado. In execution of the plans, Gallagher arranged for the formation of TLU and TLM. He became a director and officer of both companies and received 20% of the stock of the companies. He participated in TLU and TLM directors' meetings by telephone in his capacity as an officer and director. Mr. Gallagher furthermore, opened a bank account in a St. Louis County bank for TLU and TLM, and executed signature cards at the bank in his role as secretary and general counsel for the companies. Additionally, he reviewed and commented on federal tax identification forms.
Plaintiffs further assert that Gallagher billed TLU and TLM for legal services which he performed and which were not encompassed within the scope of his original agreement. TLU and TLM paid the fees. Although Gallagher maintains that these payments from plaintiffs did not constitute legal fees for services rendered, this Court concludes that plaintiffs have raised a factual question concerning the significance of these payments. For the purposes of this jurisdictional motion, plaintiffs' version of the facts must be accepted as true.
In November, 1982, Blumeyer was indicted for bribery by a Missouri court. Following the indictment, Gallagher was summoned to London to discuss the matter with Underwriters at Lloyd's. Blumeyer learned of the impending trip, and confronted Gallagher about this discovery. Gallagher denied that he had a trip to London planned and that he had been requested to discuss the indictment and TBT insurance. Blumeyer subsequently learned that Gallagher did visit Green, Blackwall and TBT insurance Underwriters in London. Gallagher finally acknowledged his London visit, and advised Blumeyer that certain underwriters wished to discontinue their business association with him in view of the indictment. Gallagher relayed to Blumeyer that the underwriters would continue their business relations on the conditions that all documents and moneys pass through Gallagher's office and that Blumeyer remain out of the transactions. Blumeyer agreed to allow Gallagher to serve as monitoring agent for the leases and to patently assume the functions of TLM. The companies retained an active role in TBT insurance transactions by fielding calls, screening inquiries and referring all business to Gallagher. The parties never agreed on a different arrangement with respect to income from TBT transactions, however, and Gallagher provided no indication that any different arrangement would be necessary. Gallagher represented to plaintiffs that he would forward a complete list of TBT insurance transactions sold with accompanying premium amounts. The list was not forthcoming, however. Plaintiffs requested similar accountings from Blackwall and Green as well, but without avail.
*1087 Gallagher characterizes these described transactions differently. He minimizes his contacts with Missouri, and claims that he agreed to represent Underwriters at Lloyd's as counsel. His loyalty was to the underwriters and thus, was obligated to pursue the instructions of underwriters alone. He also asserts that Blackwall emphasized to Blumeyer the unwillingness of underwriters to make Blackwall and Blumeyer the exclusive brokers or marketing agents for all TBT insurance transactions. Thus, Gallagher argues that Blumeyer never had a reasonable expectancy of an exclusive arrangement for TBT insurance placements. Additionally, even if Blackwall had an exclusive marketing contract with TLU which was breached, Gallagher could not have been responsible for that breach. Gallagher was the attorney for underwriters and had nothing to do with brokering or marketing of the TBT insurance, or with the commission arrangements between Blackwall, TLU and TLM. He provided no advice to Blackwall about the commission agreements and underwriters is not named as a party to this lawsuit. In addition, Gallagher advised underwriters of the need for follow-up and monitoring services for the TBT insurance. These services were primarily legal in character, however, and underwriters expressed the desire that Gallagher provide those services. Gallagher argues that TLM was incapable of providing such services, as it lacks the legal expertise which he, Gallagher possesses.
Gallagher argues that personal jurisdiction is not proper as to him because he has not committed any one of the acts which would subject him to the long-arm jurisdiction of Missouri courts, and because this Court's exercise of in personam jurisdiction over him does not comport with due process. Plaintiffs respond to the long-arm statute argument by asserting that Gallagher committed a tortious act within the State of Missouri and has transacted business within the state as well.
The tortious act component of § 506.500 has been interpreted to apply to extra territorial acts that have consequences in the forum. State ex rel. Deere and Co. v. Pinnell, 454 S.W.2d 889 (Mo. banc 1970); State ex rel. Abco Oil Corp. v. Turpin, 490 S.W.2d 400 (Mo.App.1973). This interpretation is consistent with the Missouri courts' broad interpretation of § 506.500 to extend jurisdiction of Missouri courts over the non-resident defendants to the extent permissible under the due process clause. State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo. banc 1982). In Pfeiffer v. International Academy of Biomagnetic Medicine, 521 F.Supp. 1331 (W.D.Mo.1981), the court stated the applicable rule as follows:
A non-resident defendant "commits a tortious act within the state" [consistent with § 506.500 and due process] when, through wholly extraterritorial acts it sets in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business.
Id. at 1336 (citations omitted). See also Sun World Lines, Ltd. v. March Shipping Corp., 585 F.Supp. 580, 584 (E.D.Mo.1984).
Applying these principles to the allegations and other evidence of plaintiffs herein, it is the opinion of this Court that Gallagher is subject to the long-arm jurisdiction of Missouri courts. Plaintiffs have alleged that Gallagher engaged in fraudulent conduct, intentionally interfered with plaintiffs' business expectancy, and breached his fiduciary duties towards plaintiffs. These alleged intentional tortious acts have caused actionable consequences in Missouri to Missouri residents.

MISREPRESENTATIONS
In Count II, plaintiffs allege that defendants Blackwall, Green and Gallagher conspired to deprive them of their commissions regarding the placement of TBT insurance. Defendant Gallagher maintains that the Court lacks jurisdiction because plaintiffs have not established a prima facie case. It is clear that where the basis of jurisdiction is a tort, the plaintiff must make a prima facie showing that a tort has been committed. Institutional Food Marketing *1088 Associates, Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 453 (8th Cir.1984).
This Court concludes that upon consideration of the pleadings, the affidavits and various exhibits submitted by plaintiffs, plaintiffs have established a prima facie case regarding Gallagher's fraudulent conduct. Ackmann v. Keeney-Toelle Real Estate Co., 401 S.W.2d 483, 488 (Mo.1966). Plaintiffs accuse Gallagher of falsely representing to TLU and TLM that he would continue to account to them even after Underwriters at Lloyd's expressed disapproval of Blumeyer's bribery indictment. Plaintiffs further state that Gallagher failed to inform Blumeyer that TLU and TLM would no longer receive TBT insurance income. Plaintiffs assert that these representations were material and that Gallagher knew of their falsity, which is evidenced by his secretive London meeting with Blackwall and underwriters. Plaintiffs also claim they had a right to rely on these statements as Gallagher was a co-founder, co-director, officer and shareholder of TLU and TLM. The plaintiff companies further claim damage as a result of Gallagher's representations.
While Gallagher denies these claims and has in fact presented some evidence in rebuttal, plaintiffs' factual assertions nonetheless suffice to establish a prima facie case of Gallagher's fraud when viewed in the light most favorable to plaintiffs. Gallagher argues that he would not have gratuitously provided services to TLU and TLM, and that many of these services were legal in nature. TLU and TLM did not have his legal expertise and thus were legally barred from providing these monitoring services. The nature of these services as well as the credibility of the evidence regarding Gallagher's statements are questions of fact, however. Gallagher additionally contends that any misrepresentations on his part were not the source of plaintiffs' damages. Rather, Blackwall's failure to pay the commissions was the cause of the damage. Yet, Gallagher was the individual who allegedly conveyed the false information upon which plaintiffs relied. This Court cannot hold conclusively that none of plaintiffs' injury was attributable to Gallagher. Thus, plaintiffs have established their prima facie case of fraudulent representations.

CIVIL CONSPIRACY
In Count II, plaintiffs charge Gallagher with civil conspiracy. They accuse him of conspiring with defendants Green and Blackwall to eliminate TLU and TLM from participation in TBT insurance business and from depriving the companies of commissions for services rendered. Gallagher's secretive trip to London, followed by false representations and the substitution of Gallagher for TLU and TLM is sufficient to establish a prima facie case of conspiracy. Conspiracies by their very nature must be shown by circumstantial evidence. Chmieleski v. City Products Corp., 660 S.W.2d 275, 289-90 (Mo.App.1983).

INTENTIONAL INTERFERENCE WITH PLAINTIFFS' BUSINESS EXPECTANCY
In Count III plaintiffs assert that Gallagher caused an actionable consequence in Missouri by intentionally interferring with the business expectancy of TLU and TLM. Gallagher challenges his personal jurisdiction to this count as well as by asserting that plaintiffs have not established a prima facie case. This Court disagrees however.
Gallagher had a substantial role in the formation and development of TBT insurance and he knew of plaintiffs' agreement and expectancy of business with Blackwall and the underwriters. Plaintiffs insist that Gallagher was instrumental in the breach of Blackwall's agreement through his trip to London in November, 1982, and his subsequent false representations to TLU and TLM regarding the decisions made in London. These factors must be considered in connection with Gallagher's role as an officer and director of TLU and TLM. Plaintiffs argue that Gallagher usurped a corporate opportunity by accepting business previously performed by TLU and TLM. *1089 Plaintiffs also contend that an absence of justification for this conduct is demonstrated as Gallagher conveyed false information to plaintiffs at a personal profit to defendant and a monetary deprivation to TLU and TLM. This Court concludes that these facts set forth by plaintiffs establish a prima facie case of intentional interference with business relations. Solomon v. Crown Life Insurance Co., 536 F.2d 1233, 1238 (8th Cir.1976); Tri-Continental Leasing Co. v. Neidhardt, 540 S.W.2d 210, 216-17 (Mo.App.1976).

BREACH OF FIDUCIARY DUTIES
Plaintiffs additionally allege that Gallagher breached his fiduciary duties towards them by failing to make full disclosures to them, by making false representations to them, and by retaining the monitoring function of TLM for himself. This Court concludes that these factors constitute a prima facie case of breach of fiduciary duties, as well. Gallagher asserts that he did not usurp any corporate opportunity available to TLU and TLM because he alone was able to perform the legal monitoring services requested by underwriters. Yet, the nature of the services required is a question of fact which cannot be resolved at this time.

DUE PROCESS
It is also the opinion of this Court that due process is not violated by exercising in personam jurisdiction over Gallagher with respect to Counts II, III and IV of the complaint. This action is not unlike Sun World Lines, Ltd. v. March Shipping Corp., 585 F.Supp. at 584, where the court held that its exercise of jurisdiction over a defendant complied with the due process requirements. Sun World Lines involved a plaintiff which marketed cruises on a foreign ship for defendant, plaintiffs' general agent. Defendant had never been to Missouri and all of the contacts between the parties occurred outside of the state.
In addition, jurisdiction over Gallagher meets the five factors set out by the Eighth Circuit in Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d at 1215. Although Gallagher never paid a personal visit to Missouri, he arranged for the incorporation of TLU and TLM knowing that they would principally operate out of Missouri. He was the owner of 20% of TLU and TLM stock and was an officer and director of the two companies. He attended at least one board meeting by telephone in St. Louis and was arguably the corporate counsel for the companies. He reviewed documents for TLM, billed for his services and received payment for such. All of these are significant contacts with Missouri, and permit this Court to exercise jurisdiction over Gallagher on the tort claims.

QUANTUM MERUIT
Plaintiffs' final count against Gallagher is a claim for the fair and reasonable value of materials, services and resources provided by TLU and TLM to Blackwall and Gallagher. Plaintiffs claim jurisdiction over Gallagher on this count under the transaction of business provision of the Missouri long-arm statute. Plaintiffs assert that Gallagher acted as attorney for TLU and TLM in St. Louis and billed the corporations for his legal services. He further received payments from TLU and TLM from the funds drawn on the Missouri bank account which he opened himself. Gallagher claims that these bills were for services rendered to underwriters. As previously stated, however, this issue involves a factual dispute among the parties. It is clear that Gallagher assisted the companies in obtaining federal tax identification numbers and he commented on forms used for that purpose. He also reviewed lease documents and other transaction materials for TLU and TLM, and received payment for this work. This Court concludes that a question of fact does exist as to whether Gallagher transacted business in the State of Missouri, and thus the motion for summary judgment cannot be granted for this reason.
Plaintiffs argue that Gallagher entered into a contract in the State of Missouri by *1090 opening a bank account for TLU and TLM in St. Louis County. They rely on this provision of the long-arm statute for jurisdiction as well. While the opening of an account may be considered entering a contract within a state, First National Bank of Kansas City v. Ward, 380 F.Supp. 782 (W.D.Mo.1974), the bank account is not the activity from which the claim at issue arises. Clearly, a claim asserted must arise out of the basis for the claimed jurisdiction. Wooldridge v. Beech Aircraft Corp., 479 F.Supp. 1041, 1044 (W.D.Mo. 1979). The bank account is not an issue in this matter and thus, this Court will not rely upon Gallagher's activities regarding the bank account for purposes of this jurisdictional motion.
Nonetheless, this Court concludes that plaintiffs have raised a sufficient basis for this Court's jurisdiction over Gallagher under the transaction of business provision of the long-arm statute. In addition, as in Sun World Lines, this Court is convinced that personal jurisdiction is appropriate as to Count V, even though Gallagher's contacts with Missouri in this Court alone may not be sufficient to subject him to jurisdiction. Count V is based on the same core of facts as the tort claims, and requiring plaintiffs to bring this claim in another forum would result in unnecessary duplicative litigation. Sun World Lines, Ltd. v. March Shipping Corp., 580 F.Supp. at 585.
This Court additionally concludes that Gallagher's contacts with Missouri are sufficient to satisfy due process requirements with respect to the transaction of business basis for jurisdiction in Missouri. Id.

CONCLUSION
Finally, this Court takes note of the lengthy affidavits and other exhibits submitted by the parties. The bulk of these affidavits relate to the merits of the case and to whether plaintiffs can establish a prima facie case. It is apparent that the facts at issue in Gallagher's motion are intertwined with the merits of plaintiffs' claims. Whenever the determination of a jurisdictional issue depends upon a ruling on the merits, the court has jurisdiction to proceed to a decision on the merits, and the jurisdictional question should await such a determination. Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir.1979); 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil, § 1350 (1969). The rationale behind this rule is that if the jurisdictional facts are intertwined with the merits, it is preferable that the determination be made at trial where the plaintiff may present his case in a coherent, orderly fashion, without any risk of prejudice and with respect to his case on the merits. Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285-86 n. 2 (9th Cir.1977).
For these reasons, defendant Gallagher's motion for summary judgment is denied. It may become apparent at a later date that this Court does lack jurisdiction. Yet, this Court cannot make a determination upon many of the factual issues raised whether Gallagher's claims are meritorious.