900 F.Supp. 1154 (1995)
The MAY DEPARTMENT STORES COMPANY, Plaintiff,
v.
Heywood L. WILANSKY, and The Bon-Ton Stores, Inc., Defendants.
No. 4:95-CV-1547.
United States District Court, E.D. Missouri, Eastern Division.
September 19, 1995.
*1155 *1156 *1157 Mark S. Deiermann, Thomas C. Walsh, Daniel A. Crowe, Bryan Cave, St. Louis, MO, for plaintiff.
Alan C. Kohn and Robert A. Useted, Kohn and Shands, St. Louis, MO, for Def. Wilansky.
Frank N. Gundlach, Armstrong and Teasdale, St. Louis, MO, for Def. Bon-Ton Stores, Inc.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on defendant Heywood L. Wilansky's motion to dismiss the complaint for lack of personal jurisdiction, improper venue, insufficiency of service of process, and for other relief, and defendant The Bon-Ton Stores, Inc.'s ("Bon-Ton") motion to dismiss for lack of personal jurisdiction and lack of venue or, alternatively, to transfer to the Middle District of Pennsylvania. Plaintiff The May Department Stores Company ("May" or plaintiff) opposes the motions.
Background. Plaintiff filed a two-count Complaint on Saturday, August 19, 1995, alleging that defendant Wilansky breached an employment agreement with plaintiff (Count I), and that defendant Bon-Ton tortiously interfered with the Wilansky-May employment agreement (Count II). Jurisdiction of this action is based on diversity of citizenship under 28 U.S.C. § 1332, and venue is based on 28 U.S.C. § 1391(a) and (c).
Plaintiff filed a motion for a temporary restraining order on August 25, 1995, and the Court conducted a hearing on the motion the same day. Following the hearing, the parties requested the Court to delay entry of an order on the motion for temporary relief, and then submitted a proposed Stipulated Order which provided, inter alia, that Wilansky and his agents not use or disclose any of May's confidential data, information or documents. The Court issued the Stipulated Order on August 29, 1995. The Court issued an order for expedited discovery and a protective order on September 5, 1995, and began an evidentiary hearing on May's motion for preliminary injunction on September 14, 1995, which was not concluded.
Facts. Plaintiff May is a New York corporation with its principal place of business in St. Louis, Missouri. May is in the retail store business and operates eight regional department store divisions in much of the United States. Defendant Wilansky is an individual who was a citizen and resident of the State of Texas until late August or early September 1995, and is now a citizen and resident of the State of Pennsylvania. Wilansky had been in plaintiff's employ in various executive-level positions since 1977. Defendant Bon-Ton is a Pennsylvania corporation with its principal place of business in York, Pennsylvania. Bon-Ton is engaged in the retail store business in the eastern part of the United States, primarily in Pennsylvania, New York and Maryland.
May and Wilansky entered into an Employment Agreement under which Wilansky would become the President and Chief Executive Officer of May's Filene's store division in Boston, Massachusetts (the "Employment Agreement"). (Plaintiff's Exh. 8.) The Employment Agreement was dated December 14, 1990, but was signed by Wilansky and Richard Battram, an officer of May, during the week of January 7, 1991, while on an airplane flying from New York to Boston. At that time, Wilansky was a resident of New York but was in the process of moving to Massachusetts to assume his new position. The term of the Employment Agreement was from January 15, 1991 through April 14, 1994.
*1158 Section 3 of the Employment Agreement requires that Wilansky devote his undivided time and attention to May's business. Section 4 prohibits Wilansky from engaging in any competing business during the contract term. Section 7 requires Wilansky to hold May's confidential data and information in the strictest confidence. Section 11 provides that any question or matter arising under the agreement shall be determined by the laws of the state of Wilansky's domicile.
The Employment Agreement was amended on April 7, 1992 to increase Wilansky's compensation. All other terms of the Employment Agreement remained the same. (Plaintiff's Exh. 13.) On September 16, 1992, Wilansky and Battram signed an Amendment of Employment Agreement (the "Foley's Amendment") in St. Louis, Missouri. (Plaintiff's Exh. 10; see Battram Affidavit ¶ 4.) The Foley's Amendment provides, inter alia, that Wilansky would become President and Chief Executive Officer of May's Foley's store division in Houston, Texas; the contract term was extended to April 30, 1997; and Wilansky's compensation was changed. Section 7 of the Foley's Amendment states, "Except as provided herein, all of the terms, conditions and provisions of the Employment Agreement shall remain in full force and effect." In connection with Wilansky's duties under the Foley's Amendment, Wilansky and his family moved from Massachusetts to Texas.
On Friday, August 18, 1995, Wilansky accepted the position of President and Chief Executive Officer of Bon-Ton in Pennsylvania, and on the same day announced his resignation from May effective immediately. As noted above, the instant litigation commenced the day after Wilansky's resignation, on Saturday, August 19, 1995. Later on the same day, Bon-Ton and Wilansky filed a declaratory judgment action against May in the United States District Court for the District of Pennsylvania.[1] Wilansky has now moved to Pennsylvania.
May has submitted the affidavit of Richard Battram which states in pertinent part that during the term of Wilansky's employment with May, Wilansky traveled to St. Louis a number of times for meetings with May executives and other personnel. Wilansky traveled to St. Louis in connection with May business matters at least nine times since the beginning of 1994. Wilansky personally attended a May Presidents' Council meeting in St. Louis on June 22-23, 1995, and participated by video conference in a Presidents' Teleconference held in St. Louis on July 28, 1995. (Exh. A to Plaintiff's Memorandum in Opposition to Defendant Wilansky's Motion to Dismiss, ¶¶ 6-7.)
Bon-Ton has filed the Declaration of Michael L. Gleim, one of its officers. (Exh. A to Bon-Ton's Reply Brief.) The Declaration states that Bon-Ton is in the business of owning and operating retail stores. Bon-Ton has forty-one stores in Pennsylvania, nineteen in New York, three in Maryland, two in West Virginia, and one each in New Jersey and Georgia. Bon-Ton is not authorized to do business in Missouri and has no statutory agent in Missouri. Bon-Ton does not maintain an office, mailing address, telephone listing, business records, bank accounts, business facility, personnel or agents in Missouri, nor does it conduct any manufacturing, selling or distribution of goods, products or services in Missouri. Bon-Ton has no affiliates or subsidiaries which engage in business in Missouri. Bon-Ton has no estates, leases or interests in real property located in Missouri. These assertions are not contradicted by May.

I. Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

Defendants Wilansky and Bon-Ton separately move to dismiss this action on the basis that the Missouri long-arm statute does not confer personal jurisdiction over them, and that the exercise of personal jurisdiction would violate constitutional due process. Defendants also move to dismiss on the basis of improper venue. Defendants ask in the alternative that this action be transferred to *1159 the United States District Court for the Middle District of Pennsylvania.
The party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 n. 3 (8th Cir.1982) (citations omitted). To defeat a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir.1991) (citations omitted). Because the Court relies on pleadings and affidavits in reaching its decision, and did not conduct an evidentiary hearing on the issue of jurisdiction, it must view the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party. Id.; Watlow Electric Mfg. Co. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir.1988).
A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution. Dakota Industries, Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994) (citing Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir.1991)). A two-step analysis is utilized to determine whether personal jurisdiction exists over nonresident defendants. First, it is determined whether the state long-arm statute confers jurisdiction. If so, then the Court must decide whether the exercise of personal jurisdiction would violate the Due Process Clause of the Fourteen Amendment. See Falkirk Mining Co. v. Japan Steel Works, Ltd, 906 F.2d 369, 372-73 (8th Cir.1990).
The Missouri Long-Arm Statute, R.S.Mo. § 506.500 (1994), provides in pertinent part:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
* * * * * *
Missouri construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause, within the specific categories enumerated in the statute. State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984). Missouri courts have liberally construed the "transaction of any business" provision of the long-arm statute. See Precision Construction Co. v. J.A. Slattery Co., 765 F.2d 114, 117 (8th Cir.1985). Similarly, the "commission of a tortious act" provision and the "making of any contract" provisions are broadly construed. See Institutional Food Mktg. Associates, Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 453, 455 (8th Cir.1984).
The Due Process Clause limits the power of a state to assert personal jurisdiction over a nonresident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). A state may exercise personal jurisdiction over a nonresident defendant consistent with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).
"In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations and internal quotations omitted). The defendant's contact with the forum state must be purposeful and such that *1160 defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A party may anticipate being haled into court in a particular jurisdiction if it "purposefully directed" its activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citations omitted).
The relevant contacts with the forum state must be more than random, fortuitous or attenuated. Id. at 475, 105 S.Ct. at 2183 (citations omitted). Defendants must have purposefully availed themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The Due Process Clause precludes personal jurisdiction unless the actions of the defendant created a "substantial connection" with the forum state. McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).
In evaluating the propriety of jurisdiction, this Court must consider (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Bell Paper Box, Inc. v. Trans Western Polymers, 53 F.3d 920, 922 (8th Cir.1995) (citations omitted). Of these factors, the first three are the most important. Id.
Once the Court has found the requisite minimum contacts, it must still determine whether the exercise of jurisdiction conforms with "fair play and substantial justice." International Shoe, 326 U.S. at 320, 66 S.Ct. at 160. Even if requisite minimum contacts are found, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, due process requires that jurisdiction be denied. Burger King, 471 U.S. at 477-478, 105 S.Ct. at 2184-2185.
With these standards in mind, the Court will now examine whether the exercise of personal jurisdiction over Bon-Ton and Wilansky is appropriate.

A. Defendant Bon-Ton.

1. Missouri Long-Arm Statute

In its Complaint, May alleges that defendant Bon-Ton deliberately and tortiously interfered with May's employment agreement with Wilansky. The Complaint asserts that jurisdiction is proper over Bon-Ton by means of the "commission of a tortious act" provision of the Missouri long-arm statute, § 506.500.1(3). In its memorandum in opposition to the Bon-Ton's motion to dismiss, May argues that the tortious act provision extends to "extraterritorial acts that have consequences in the forum."
May contends that a nonresident defendant commits a tortious act within Missouri consistent with the long-arm statute and due process when "through wholly extra-territorial acts it set in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business." May asserts that Bon-Ton's alleged tortious interference with the May-Wilansky contract will harm May in Missouri both economically and in terms of having to replace Wilansky unexpectedly. May states that its Kaufmann's store division is in direct competition with Bon-Ton in New York, Pennsylvania and Maryland, and that Wilansky had full access to confidential May business and trade secret information which could be used to Bon-Ton's benefit and Kaufmann's and May's detriment.
Plaintiff's Complaint does not assert that Bon-Ton had any contacts with Missouri other than the extraterritorial act of interfering with the May-Wilansky contract, which allegedly will have consequences in Missouri. Thus, the Court must determine whether the alleged extraterritorial tortious act alone is sufficient to support the exercise of personal jurisdiction over Bon-Ton under the long-arm statute.
*1161 Several cases have held that the tortious act component of the Missouri long-arm statute applies to extraterritorial acts causing consequences in the forum. See Schwartz & Associates v. Elite Line, Inc., 751 F.Supp. 1366, 1369 (E.D.Mo.1990); Nelson v. R. Greenspan & Co., 613 F.Supp. 342 (E.D.Mo.1985); Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd., 613 F.Supp. 1082, 1087 (E.D.Mo.1985); Sun World Lines, Ltd. v. March Shipping Corp., 585 F.Supp. 580 (E.D.Mo.1984); Pfeiffer v. International Academy of Biomagnetic Medicine, 521 F.Supp. 1331, 1336 (W.D.Mo.1981).
Bon-Ton asserts that all of these decisions are factually distinguishable from the present case, in that each defendant had some direct contact with Missouri apart from the mere effect of its extraterritorial act. However, in Peabody Holding Co., Inc. v. Costain Group PLC, 808 F.Supp. 1425, 1433-34 (E.D.Mo. 1992) (J. Limbaugh), this Court determined that the "commission of a tortious act" provision of the statute permitted jurisdiction over a defendant corporation where the sole basis for jurisdiction was an extraterritorial act, tortious interference with a contract, which produced an effect in the State of Missouri.
Based on the holding in Peabody, the Court concludes that the tortious act provision of the long-arm statute confers jurisdiction over defendant Bon-Ton.

2. Constitutional Due Process

Having found that jurisdiction over Bon-Ton is proper under the long-arm statute, the Court must now determine whether the exercise of such jurisdiction would violate due process requirements.
This Court has previously determined that a "plaintiff may not invoke tortious [act] long-arm jurisdiction consistent with due process where the non-resident defendant had no contact with Missouri besides the extraterritorial acts having consequences" in the state. Peabody, 808 F.Supp. at 1437. The Court in Peabody noted that several cases under Missouri law had reached this conclusion, including Hanline v. Sinclair Global Brokerage Corp., 652 F.Supp. 1457, 1460-61 (W.D.Mo.1987); Hasty v. PACCAR, Inc., 583 F.Supp. 1577, 1580 (E.D.Mo.1984); School District of Kansas City v. State of Missouri, 460 F.Supp. 421, 435 (W.D.Mo.1978); State ex rel. Sperandio v. Clymer, 581 S.W.2d 377, 382-83 (Mo. banc 1979); State ex rel. Wichita Falls General Hospital v. Adolf, 728 S.W.2d 604, 609 (Mo.App.1987). Similar conclusions were reached in State ex rel. William Ranni Associates, Inc. v. Hartenbach, 742 S.W.2d 134, 137-38 (Mo. banc 1987); State ex rel. Bank of Gering v. Schoenlaub, 540 S.W.2d 31, 35 (Mo. banc 1976); Stavrides v. Zerjav, 848 S.W.2d 523, 529 (Mo.App.E.D.1993).
This Court concurs with the reasoning set forth in Peabody and the cases cited above. Bon-Ton does not transact business in Missouri, and has no offices, bank accounts, agents or assets in Missouri. Nothing in the record indicates that Bon-Ton utilized any form of communication with any person in Missouri in connection with its negotiations with Wilansky which allegedly led to his breach of contract with May.
It is apparent Bon-Ton did not purposefully avail itself of the privileges of conducting activities within the State of Missouri, nor did it invoke the privileges and protections of Missouri law. The Court concludes that the limited contact which Bon-Ton has with Missouri, i.e., the impact of its allegedly tortious activity, is "so attenuated that the maintenance of a suit would offend traditional notions of fair play and substantial justice." Peabody, 808 F.Supp. at 1437-38.
Thus, the Court concludes it lacks in personam jurisdiction over Bon-Ton. As a result of this conclusion, it is not necessary to address Bon-Ton's motion to dismiss for improper venue, and the same will be denied as moot.

B. Defendant Wilansky.

1. Jurisdiction

In its Complaint, plaintiff asserts that defendant Wilansky breached his employment agreement with plaintiff by accepting employment with Bon-Ton, a competing retail store business, prior to the end of the contract term. The Complaint states that jurisdiction is proper over Wilansky under of the "transaction of business" provision of the *1162 Missouri long-arm statute. In its memorandum in opposition to Wilansky's motion to dismiss, May also argues that jurisdiction is proper over Wilansky under the "making of a contract" provision of the statute because he executed a key contract document, the Foley's Amendment, in St. Louis.[2]
Wilansky responds that his "sporadic visits to the forum state" following the execution of the Foley's Amendment are unrelated to this litigation and insufficient to establish personal jurisdiction. Wilansky also asserts that the document he signed in St. Louis was merely an amendment to the parties' original Employment Agreement, a Massachusetts contract, and that execution of the amendment in St. Louis does not transform the situs of the original agreement. Wilansky further contends that most of the disputed contract terms are in the original Employment Agreement, which has no connection with Missouri and cannot serve as a predicate for long-arm jurisdiction under the statute.
May counters that Wilansky has had significant contacts with the State of Missouri. Wilansky was employed for approximately eighteen years by plaintiff May, which has its principle place of business in St. Louis. Wilansky executed one of the key contract documents relevant to this action, the Foley's Amendment, in St. Louis in 1992. Wilansky traveled to St. Louis a number of times in connection with his employment, including nine visits since January 1994. During these visits, Wilansky met with May executives and other personnel and in so doing discharged some of his duties under the various agreements he signed with May, which form the basis for this action. Wilansky also participated in telephone conferences with May executives and other personnel in connection with his duties under the various agreements. Finally, while at meetings in St. Louis, Wilansky acquired sensitive and confidential May information which would harm May if disclosed to Bon-Ton.
To defeat Wilansky's motion to dismiss for lack of personal jurisdiction, plaintiff need only make a prima facie showing of jurisdiction. Dakota Industries, 946 F.2d at 1387 (citations omitted). The Court is mindful of its obligation to view the facts in the light most favorable to the nonmoving party, and to resolve all factual conflicts in its favor. Id. (citations omitted).
As noted above, the "transaction of business" provision of the long-arm statute is construed broadly. Gaertner, 677 S.W.2d at 327; State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo. banc 1982). Missouri courts have held that personal jurisdiction is appropriate under the long-arm statute in a contract dispute if the nonresident defendant entered the state for even one meeting which related to the contract at issue. See, e.g., Sheldon v. S & A Rx, Inc., 683 F.Supp. 1289, 1290-91 (E.D.Mo.1988); Boatmen's First Nat'l Bank of Kansas City v. Bogina Petroleum Engineers, 794 S.W.2d 703, 704 (Mo. App.1990); Watlow Electric Mfg. Co. v. Sam Dick Industries, Inc., 734 S.W.2d 295, 298 (Mo.App.1987).
Wilansky does not dispute that he signed the Foley's Amendment in St. Louis, or that he has made numerous visits to Missouri and had numerous communications with persons in Missouri in connection with his long-term employment by May. In accordance with its obligation to construe the facts most favorably to the non-moving party, the Court cannot agree with Wilansky's characterization of these contacts with Missouri as "sporadic" and unrelated to this litigation. The Court concludes that Wilansky's visits to and contacts with Missouri in connection with his employment constitute the transaction of business within the meaning of the Missouri long-arm statute.[3]
Given the nature, quality and quantity of Wilansky's alleged contacts with the State of Missouri, the Court concludes Wilansky's *1163 actions are such that the exercise of personal jurisdiction over him would not violate constitutional due process requirements. These alleged contacts establish that Wilansky purposefully availed himself of the privileges of conducting activities within the State of Missouri and invoked the privileges and protections of Missouri law, such that the exercise of personal jurisdiction does not offend notions of fair play and substantial justice.

2. Venue

The Court must now determine whether this district is a proper venue for plaintiff's claims against Wilansky. Plaintiff relies on 28 U.S.C. § 1391(a)(2), which provides in pertinent part that venue in a diversity case is proper "[in] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Under this statute, the Court must determine whether this district has a substantial connection to the claim, not whether other forums may have greater contacts. Setco Enterprises Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir.1994).
Plaintiff argues that venue is proper because the Foley's Amendment was prepared and executed in Missouri, Wilansky's contractual obligations were performed and were to be performed in part in Missouri, and the consequences of Wilansky's breach are being felt in Missouri where plaintiff has its principal place of business. Plaintiff also notes that its claims for injunctive relief are based partially upon the fact that Wilansky was provided with confidential information during the meetings he attended in Missouri. Wilansky responds that no substantial portion of the events or omissions giving rise to plaintiff's claim occurred in Missouri, but rather in Massachusetts, Texas and Pennsylvania, the states in which the original Employment Agreement was signed, performed and allegedly breached.
The Court finds there is a substantial nexus between the events alleged by plaintiff to have occurred in Missouri and this cause of action, although significant events occurred outside this district as well. The Court concludes that venue is proper in this district as to defendant Wilansky under 28 U.S.C. § 1391(a)(2). Wilansky's motion to dismiss on the basis of improper venue will be denied.

II. Insufficient Service of Process  Defendant Wilansky.

The Court must still determine whether sufficient service of process was obtained on defendant Wilansky. Wilansky moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(5), or to quash service of process, on the basis that he was improperly served by means of fraud and trickery.
The record shows Wilansky notified May he intended to resign from its employ by telephone call to Richard Battram on August 18, 1995. Battram called Wilansky back and asked him to come to St. Louis to discuss the issues. At some point thereafter, May had its attorneys prepare the instant Complaint. On Saturday morning, August 19, 1995, May sent a company airplane to Texas to pick up Wilansky and bring him to St. Louis. Also on Saturday morning, counsel for May persuaded the Clerk of the Court to open the Clerk's office and file the Complaint.
Wilansky met with Battram in Battram's office. The men discussed whether Wilansky's decision was final, and when it became clear to Battram that it was, Battram asked May's Secretary and General Counsel and one of May's attorneys from the Bryan Cave LLP firm, to come into the office. One of the attorneys handed Wilansky a summons and a copy of the Complaint, which had already been filed.
It is well-established law that if a person is induced by fraud or trickery to come within the jurisdiction of a court for the purpose of procuring service of process, service should be set aside. See Voice Systems Marketing Co., L.P. v. Appropriate Technology Corp., 153 F.R.D. 117, 119 (E.D.Mich. 1994); Henkel Corp. v. Degremont, S.A., 136 F.R.D. 88, 91-92 (E.D.Pa.1991); K Mart Corp. v. Gen-Star Industries Co., Ltd., 110 F.R.D. 310, 312 (E.D.Mich.1986) (citing Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 256, 29 S.Ct. 445, 448, 53 L.Ed. 782 *1164 (1909)) ((citing Fitzgerald & Mallory Constr. Co. v. Fitzgerald, 137 U.S. 98, 11 S.Ct. 36, 34 L.Ed. 608 (1890))); Coyne v. Grupo Industrial Trieme, S.A. de C.V., 105 F.R.D. 627, 629 (D.D.C.1985); Sunshine Kitchens, Inc. v. Alanthus Corp., 65 F.R.D. 4, 5-6 (S.D.Fla. 1974); see also Annotation, Attack on Personal Service As Having Been Obtained by Fraud or Trickery, 98 A.L.R.2d 551 (1965). This rule has been applied for more than 100 years and emanates from a court's discretion not to exercise its power over a defendant. Coyne, 105 F.R.D. at 629. "Immunity from process is granted not to serve the defendant's convenience but to further the administration of justice." Id. (citations omitted).
When service is made following settlement negotiations or business meetings, courts have recognized the potential for dispute over whether the negotiations or meetings were instituted and carried out in good faith prior to service. It has been held in various cases that a plaintiff's real purpose was to serve the defendant with process and process should be quashed where there were prior arrangements for a process service to be present at the meeting, Sunshine Kitchens, Inc., 65 F.R.D. at 5, where the plaintiff's lawyers were preparing the lawsuit at the same time the plaintiff was urging the defendant to enter the jurisdiction, Oliver v. Cruson, 153 F.Supp. 74, 78 (D.Mont.1957), where a plaintiff failed to clearly warn a defendant before he entered the jurisdiction that the defendant would be served if talks failed, E/M Lubricants, Inc. v. Microfral, S.A.R.L., 91 F.R.D. 235, 238 (N.D.Ill.1981), and where a plaintiff failed to give the defendant an opportunity to leave the jurisdiction before service is made, Coyne, 105 F.R.D. at 630.
Several courts which have addressed this issue have adopted a bright-line rule prohibiting service of process where a plaintiff has induced a defendant to enter the jurisdiction for talks, unless the plaintiff first warns the defendant before he enters the jurisdiction that he may subject himself to service, or gives the defendant an opportunity to leave the jurisdiction before service is made if settlement talks fail. See, e.g., Voice Systems, 153 F.R.D. at 119; Henkel, 136 F.R.D. at 96; K Mart Corp. v. Gen-Star, 110 F.R.D. at 314; Coyne, 105 F.R.D. at 630; Commercial Bank & Trust Co. v. District Court, 605 P.2d 1323, 1326 (Okla.1980).
The bright-line rule "promotes good faith settlement, is efficient from a judicial standpoint, and serves to distance the courts from the possibility of trickery. A bright-line rule also obviates a determination of whether the plaintiff intended to file a complaint at the time the parties were arranging the settlement meeting." K Mart Corp. v. Gen-Star, 110 F.R.D. at 313 (relying on Coyne, 105 F.R.D. at 630). As noted in Coyne, "[C]ourts should avoid, if possible, the unpleasant and often impossible task of judging the inevitable swearing matches about who said what to whom. A rule that requires the plaintiff to make it absolutely clear to the defendant that service may be made if he enters the jurisdiction helps to avoid this waste of judicial resources." 105 F.R.D. at 630.
This Court finds the reasoning of the cases which have adopted a bright-line rule persuasive, and concludes that such a rule best serves the orderly administration of justice. Thus, service should be quashed when a defendant enters a jurisdiction for talks at a plaintiff's instigation, and the plaintiff has not either clearly and unequivocally informed the defendant that service of process may occur, or given the defendant a chance to leave the jurisdiction before service is made.
The factors courts have relied on in quashing service as improperly obtained are present in this case. It is undisputed that May, through Battram, initiated the August 19, 1995 meeting in St. Louis for the purpose of discussing Wilansky's decision to leave May's employ. Assuming that Battram and May intended to discuss the issue in good faith at the meeting, it is undisputed that May had filed its Complaint and had attorneys ready to serve Wilansky with process when it became clear he would not remain with May. May does not contend that it clearly warned Wilansky he might be served with process if he came to St. Louis, or that it gave him an opportunity to leave the jurisdiction before service was made. Applying the bright-line rule, the Court concludes the service of process on Wilansky should be quashed.
*1165 The Court still must determine whether the action against Wilansky should be dismissed. A leading treatise on federal procedure notes that courts "have broad discretion to dismiss the action or retain the case but quash the service that has been made on defendant." See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1354 (1990). "Service generally will be quashed and the action preserved in those cases in which there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly." Id. The courts, however, have more often dismissed a complaint without discussing alternative means of service where trickery or bad faith has been found. See Voice Systems, 153 F.R.D. at 119; K Mart Corp. v. Gen-Star, 110 F.R.D. at 315; Coyne, 105 F.R.D. at 630-31; E/M Lubricants, 91 F.R.D. at 238.
The Court concludes that plaintiff's action against Wilansky should not be dismissed. In adopting the bright-line rule, this Court has made no findings of bad faith or trickery on the part of plaintiff May. There is little substantive difference between dismissal for improper service and quashing of service. A dismissal would require plaintiff to refile its Complaint and use proper means to serve Wilansky, while quashing of service merely requires new service. See 5A Wright & Miller, supra, § 1354. There is nothing in the record which suggests that May will not able to properly serve Wilansky. The Court concludes a dismissal would serve no purpose in this case and will order that service upon defendant Wilansky be quashed.

III. Defendants' Alternative Motions to Transfer to the Middle District of Pennsylvania.

The defendants have moved in the alternative pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) for a change of venue in this action to the United States District Court for the Middle District of Pennsylvania, where another action is pending among the parties. Defendant Bon-Ton has requested the Court to transfer this action unless both defendants are dismissed.
The Court has determined that it has personal jurisdiction over Wilansky but not over Bon-Ton. The Court may transfer the plaintiff's action against Bon-Ton to a district where it is subject to jurisdiction and where venue is proper under 28 U.S.C. § 1406(a). This section authorizes transfer where venue was improperly laid and provides:
The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
The Court has found venue proper in this district as to defendant Wilansky, but now must consider whether the remainder of this action should also be transferred to the Middle District of Pennsylvania pursuant to § 1404(a). This section provides:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
In determining whether or not to transfer venue, the Court considers the three factors expressed in § 1404(a): The convenience of the parties, the convenience of the witnesses, and whether the transfer would be in the interest of justice. I-T-E Circuit Breaker Co. v. Regan, 348 F.2d 403, 405 (8th Cir.1965); Houk v. Kimberly-Clark Corp., 613 F.Supp. 923, 927 (W.D.Mo.1985). Convenience of the witnesses is a primary, if not the most important, factor in considering a motion under § 1404(a). Houk, 613 F.Supp. at 927; American Standard, Inc. v. Bendix Corp., 487 F.Supp. 254, 262 (W.D.Mo.1980). Additional factors which may be considered include:
[P]ractical problems that make trial of a case easy, expeditious and inexpensive, such as access to sources of proof and availability of compulsory process for witnesses and expenses attendant to the production of witnesses; the relative advantages and obstacles to fair trial, and the relative congestion of the calendars of the potential transferee and transferor courts.
Wooldridge v. Beech Aircraft Corp., 479 F.Supp. 1041, 1057 (W.D.Mo.1979) (citations and internal quotations omitted). The Court *1166 is mindful that it may not disturb a plaintiff's choice of forum unless a balance of relative considerations tips strongly toward the defendant. St. Louis Federal Savings and Loan Ass'n v. Silverado Banking, Savings and Loan Ass'n, 626 F.Supp. 379, 383 (E.D.Mo.1986); Wooldridge, 479 F.Supp. at 1057.
It does not appear that the convenience of the parties or the witnesses would be substantially enhanced by transfer of this action. This district is more convenient for the plaintiff and the Middle District of Pennsylvania is more convenient for the defendants. As it appears most of the key witnesses will be employees of May and Bon-Ton, neither jurisdiction would be necessarily more convenient for the witnesses as a whole. The interests of justice, however, clearly and strongly weigh in favor of the transfer of the entire action to the Middle District of Pennsylvania, for the reasons discussed below.
The Court has noted that on the same day the instant action was filed, defendants filed a declaratory judgment action in the Middle District of Pennsylvania (the "Pennsylvania action"). In the Pennsylvania action, defendants seeks a declaration that the May-Wilansky contract is invalid. Wilansky, Bon-Ton and May are all subject to personal jurisdiction in the Middle District of Pennsylvania. Thus, this action "might have been brought" in that district. 28 U.S.C. § 1404(a). In addition, venue is proper in the Middle District of Pennsylvania because Wilansky resides in that district, and Bon-Ton and May both conduct business in and thus are deemed to "reside" in that district. 28 U.S.C. § 1391(a), (c).
The efficient use of judicial resources and the benefit all parties will receive from preventing unnecessary duplication of time, effort and expense weigh heavily in favor of transfer. See Wooldridge, 479 F.Supp. at 1058. While this Court has jurisdiction over Count I of the Complaint, a breach of contract claim against Wilansky, it does not have jurisdiction over Count II, a tortious interference claim against Bon-Ton concerning the Wilansky-May contract. If both claims were not transferred, the Court would have to dismiss the Complaint against Bon-Ton and only Wilansky would remain as a defendant. Plaintiff would then proceed in this Court against Wilansky and could bring a separate action against Bon-Ton elsewhere, while also defending itself in the Pennsylvania action. "It is widely recognized that an action should not be split between two districts. Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results." Wooldridge, 479 F.Supp. at 1058-59 (citations and internal quotations omitted.)
Plaintiff's claims against the two defendants are so closely intertwined that significant duplication of effort would be unavoidable if two separate actions on its claims were conducted in different districts. Many of the same witnesses would be essential to each action, and would be required to give their testimony in two lawsuits rather than one. Further, there is a very real possibility of inconsistent results if plaintiff's claims are before two courts. For these reasons, the Court concludes this action should be transferred from this district to the Middle District of Pennsylvania, where it can be consolidated with the Pennsylvania action if the Court there so determines, or proceed to resolution along with the Pennsylvania action.
Accordingly,
IT IS HEREBY ORDERED that defendant Heywood L. Wilansky's motion to dismiss the complaint for lack of personal jurisdiction, improper venue, insufficiency of service of process, and for other relief is DENIED except as follows: Wilansky's motion to quash service of process is GRANTED and service on defendant Wilansky is hereby quashed, and Wilansky's alternative motion to transfer venue is GRANTED. [Doc. 12]
IT IS FURTHER ORDERED that defendant The Bon-Ton Stores, Inc.'s alternative motion to transfer to the Middle District of Pennsylvania is GRANTED. [Doc. 16-3]
IT IS FURTHER ORDERED that defendant The Bon-Ton Stores, Inc.'s motion to dismiss for lack of personal jurisdiction and *1167 for lack of venue is DENIED as moot. [Doc 16-1, 16-2]
IT IS FURTHER ORDERED that all other pending motions are DENIED without prejudice to refiling in the United States District Court for the Middle District of Pennsylvania.
IT IS FURTHER ORDERED that this matter is TRANSFERRED to the United States District Court for the Middle District of Pennsylvania.
NOTES
[1] The case is styled Heywood L. Wilansky, et al. v. The May Department Stores, Inc., No. 1:CV-95-1413 (M.D.Pa.)
[2] May asserts that it did not specifically plead R.S.Mo. sec. 506.500.1(2) as a basis for jurisdiction in its Complaint, because it had not yet verified that Wilansky signed the Foley Amendment in Missouri.
[3] As a result of this conclusion, the Court does not address the parties' contentions as to whether the "making of any contract" provision of the long-arm statute would also confer jurisdiction over Wilansky.